KENNETH S. HIXSON, Judge
Appellant Zion Woods was charged in the criminal division of circuit court with three counts of committing a terroristic act *126 and one count of possession of a handgun by a minor (second offense), in addition to a firearm enhancement for employing a firearm in the commission of a felony. Zion was sixteen years old when the information was filed. Zion's codefendant K.D., also a minor, was also named as a defendant in the criminal information.
Zion filed a motion to transfer the case to the juvenile division of circuit court. K.D. also filed a motion to transfer. After a hearing on these motions, the trial court entered an order denying Zion's motion to transfer, making written findings in support of its decision.[1]
Zion now appeals from the order denying his motion to transfer to juvenile court. On appeal, Zion argues that the trial court's denial of his motion to transfer was clearly erroneous. We affirm.
Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2015). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court. Kiser v. State , 2016 Ark. App. 198, 487 S.W.3d 374. The trial court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. Z.T. v. State , 2015 Ark. App. 282. We will not reverse a trial court's determination of whether to transfer a case unless the decision is clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. Id.
At a juvenile-transfer hearing, the trial court is required to consider all of the following factors:
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
*127 (7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the judge.
Ark. Code Ann. § 9-27-318(g). Pursuant to Arkansas Code Annotated section 9-27-318(h)(1), a trial court shall make written findings on all of the factors set forth above. However, there is no requirement that proof be introduced against the juvenile on each factor, and the trial court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. K.O.P. v. State , 2013 Ark. App. 667.
Officer Troy Dillard of the Little Rock Police Department testified at the transfer hearing. Officer Dillard testified that on May 4, 2017, an emergency call was received regarding shots fired at an apartment complex. When officers arrived, they discovered that there were bullet strikes to the interior of three apartments. There were a total of ten people occupying these three apartments, including six minors, and fortunately the gunfire did not hit anyone. One of the apartment residents advised the police that, after the shooting, she saw a black male standing in a backyard that was adjacent to the apartments.
The police went to the adjacent residence to investigate, and they saw a black male run inside the house. The police made contact with the woman who lived there, who was K.D.'s guardian. The woman gave consent to enter the house, and both K.D. and Zion were found inside the house and were detained by the police. The police found several spent shell casings in the backyard. There was a Buick LaSabre that belonged to Zion's mother parked at the residence, and after obtaining a search warrant, the police found ammunition in the car. After the police arrested and Mirandized the suspects, K.D. gave a statement, but Zion laughed and said he had nothing to talk about.
The State introduced a photograph from a Facebook post showing Zion pictured with six other individuals. According to Officer Dillard, some of these individuals were known gang members and some of the persons in the photograph, including Zion, appeared to be "throwing gang signs" with their hands.
Jennifer Baptist testified that she was Zion's juvenile-probation officer. Prior to the current charges, Zion had been adjudicated delinquent for minor in possession of a handgun and was on an indeterminate period of probation. According to Ms. Baptist, Zion had complied with some of his probation requirements but had failed to complete anger management and had twice tested positive for marijuana.
Ms. Baptist indicated that Zion was doing well in school in advanced classes. She also indicated that there were other services available to him in the juvenile system, including an ankle monitor, case management, boot camp, and commitment to the Department of Youth Services. Ms. Baptist thought that Zion could be helped, and she recommended that the case be transferred to juvenile court.
K.D. testified that he knew Zion from school and that they were together on the day the shots were fired. K.D. stated that he was riding in Zion's car and he saw that Zion had a handgun. Zion drove to the residence where K.D. had been living with *128 his godmother for the past few months. According to K.D., they went into the backyard and Zion began shooting multiple times at a tree. Then Zion gave the gun to K.D., and K.D. shot at the tree. K.D. maintained that, when they fired the shots, they did not see the apartments that were behind the backyard. He did acknowledge, however, that he told Zion there were apartments there after they were done shooting. K.D. indicated that neither one of them intended to shoot at the apartments and that the bullets striking the apartments was accidental.
Zion's grandmother testified for the defense. She indicated that Zion attended Parkview High School, was a good student, and also worked part-time at a movie theater. She stated that this latest arrest got his attention and that Zion apologized to both her and Zion's mother. She further stated that Zion is not allowed to "run around a lot without supervision."
Zion also introduced letters written in his support by two of his school teachers and a school counselor. These letters portrayed Zion as an intelligent and hardworking student with potential and a bright future.
In the trial court's order denying Zion Woods's motion to transfer, the trial court made written findings on the factors enumerated in Arkansas Code Annotated section 9-27-318(g). The trial court found:
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court. The Court notes that both defendants are charged with serious offenses- A.C.A. § 5-13-310(a)(2) & (b)(1) Terroristic Act-Occupiable Structure Class B Felony with a punishment range of five (5) years to twenty (20) years and A.C.A. 5-73-119(a)(1) Handgun-Possession by Minor Class D Felony with a punishment range of zero (0) years to six (6) years.
(2) The alleged offenses were not committed in a violent, aggressive, or premeditated manner but were committed in a willful manner.
(3) The alleged offenses were committed against property and not persons.
(4) The culpability of Woods is confirmed by the testimony of his co-defendant. K.D. testified that Woods had possession of the firearm; Woods presented the idea of firing the weapon; Woods fired the weapon several times towards the tree; and Woods had last possession of the gun before arrest. K.D.'s culpability is the same in that K.D. fired the weapon two to three times toward the tree but the gun did not belong to K.D. and shooting at the target was not K.D.'s idea.
(5) Considering the previous history of the juveniles, including whether the juvenile has been adjudicated a juvenile offender, and if so whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of violence, the Court finds that Woods has such a history. Woods has been adjudicated as a juvenile involving possession of a handgun in a reasonable proximity (less than two years) to this current charge. Woods has been photographed with known persons of gang affiliations. Woods was under juvenile probation supervision at the time these alleged offenses occurred. K.D. has no previous history as a juvenile offender.
(6) Considering the sophistication or maturity of the juveniles as determined by his home, environment, emotional attitude, pattern of living, or desire to be treated as an adult, Woods does not show any emotional instability or deficits. There is no evidence that Woods is *129 unsophisticated or immature. Letters from Woods' teachers show that Woods can function at an AP level educationally. According to testimony, Woods now lives with his grandmother Linda Hooks. Ms. Hooks testified that Woods holds a stable job at the Rave movie theater, often takes on co-workers' shifts, and has a curfew but could not give the precise time of the curfew in her own home. Ms. Hooks testified that Woods generally didn't get in trouble but simultaneously was not aware of several arrests and disciplinary actions at school concerning Woods. K.D. by testimony is slightly older than Woods, appeared sophisticated, was photographed holding a gun prior to incident, but did not have a previous history with handling guns and had not shot a gun before this incident.
(7) Considering whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday, the Court finds that K.D. has never been through Juvenile Court or been under its probation supervision and will likely be rehabilitated through its programs before his twenty-first birthday. As to Woods, the Court finds that there are programs available but are not likely to rehabilitate Woods before his twenty-first birthday. Past performance in the programs available is an inclination of Woods' future behavior. Woods was given the opportunity to benefit from Juvenile programs but chooses not to and does not appear inclined to participate. At the juvenile level, Woods did not complete an anger management course as ordered by juvenile court, failed drug tests while under juvenile supervision, and picked up new charges while under juvenile supervision. When the Defendant picked up new charges, Woods' juvenile supervision was closed out and no further action was taken by Juvenile Court. The programs recited by Probation Officer Baptist included GPS ankle monitoring, more intensive case management, C-Step or DYS. GPS monitoring and case management will not stop Woods from obtaining, possessing, or using a handgun or being wherever Woods wants to be.
(8) Mr. Woods and K.D. acted together and not alone.
(9) Considering the written reports and other material submitted related to Woods' mental, physical, educational, and social history shows that Woods earned good grades at a science magnet high school. Specifically, he earned high grades in courses related to physics. Firearms operate on physics. He has great grades in grammar. Woods' social history includes a previous weapons charge. Woods has a record of being in the presence of handguns and allegedly discharging handguns in a neighborhood. K.D., as exhibited during testimony, does not appear to suffer from any deficits. K.D.'s social history does not include a prior record of any criminal activity.
After consideration of the aforementioned factors and evidence presented, the Court finds by clear and convincing evidence that Mr. Woods' transfer request is DENIED and K.D.'s transfer request is GRANTED for the reasons stated above.
In this appeal, Zion argues that the trial court clearly erred in denying his motion to transfer the case to juvenile court. In support of his argument, Zion states that three of the statutory factors weighed in his favor. Zion notes that the trial court found that the offenses were not committed in a violent, aggressive, or premeditated manner; that the offenses were *130 not against people but property; and that the written reports showed that Zion earned good grades at school. Zion further asserts that, in denying his transfer motion, the trial court failed to address K.D.'s testimony that neither K.D. or Zion intentionally shot at the apartments and that it was an accident that any of the apartments were struck by the gunfire. For these reasons, Zion asks that we reverse the trial court's order and remand for the charges to be transferred to the juvenile division of circuit court.
Based on our review of the record, we conclude that the trial court's decision denying Zion's transfer motion was not clearly erroneous. While there were some factors tending to favor juvenile jurisdiction, the trial court weighed these factors against the other factors that favored jurisdiction in the criminal division of circuit court. The trial court is not required to give equal weight to each of the statutory factors, and it may use its discretion in deciding the weight to be afforded each factor. Kiser, supra.
As found by the trial court, the charges against Zion were serious and involved the discharging of a firearm in a residential neighborhood. Multiple shots struck the interior of nearby apartments where several people were present. Although Zion's codefendant stated that they did not know the apartments were there, it was for the trial court to assess the credibility of this statement. At the time of these offenses Zion was on probation for having previously possessed a handgun, and during his probation he failed to complete anger management and failed two drug tests. The trial court found that Zion was not unsophisticated or immature, noting that he functioned at an accelerated level academically and held a stable job. We are not left with a firm and definite conviction that the trial court made a mistake in denying appellant's motion to transfer the case to juvenile court. Accordingly, we affirm the trial court's order.
Affirmed.
Abramson and Virden, JJ., agree.

In the same order, the trial court granted K.D.'s motion to transfer. K.D. is not a party to this appeal.