Cite as 2019 Ark. App. 576

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-19-317

|  |  |
|---|---|
| ANTHONY MICHAEL SPEARS, JR.<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** December 4, 2019<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-18-1214]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>REVERSED AND REMANDED FOR RECONSIDERATION OF JUVENILE-TRANSFER MOTION |

## KENNETH S. HIXSON, Judge

Appellant Anthony Michael Spears, Jr., was charged in the criminal division of circuit court with accomplice to first-degree battery with an enhancement for engaging in a violent criminal group activity. Spears, who was sixteen years old at the time of the offense, was alleged to have acted in concert with Travis Harris and Bret Jackson in causing physical injury to Chance Cooper by means of a firearm on June 12, 2018.

Spears filed a motion to transfer the case to the juvenile division of circuit court. After a hearing on the motion, the trial court entered an order denying Spears's motion to transfer, making written findings in support of its decision.

Spears now appeals from the order denying his motion to transfer to juvenile court. On appeal, Spears argues that the trial court's denial of his motion to transfer was clearly

erroneous and based on matters not placed in evidence at the transfer hearing. We reverse and remand for reconsideration of the transfer motion.

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2015). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court. *Kiser v. State*, 2016 Ark. App. 198, 487 S.W.3d 374. The trial court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Woods v. State*, 2018 Ark. App. 576, 565 S.W.3d 124. We will not reverse a trial court's determination of whether to transfer a case unless the decision is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id*.

At a juvenile-transfer hearing, the trial court is required to consider all of the following factors:

> (1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense.

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). Pursuant to Ark. Code Ann. § 9-27-318(h)(1), a trial court shall make written findings on all of the factors set forth above. However, there is no requirement that proof be introduced against the juvenile on each factor, and the trial court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *K.O.P. v. State*, 2013 Ark. App. 667.

Liliana Salamanca, Spears's mother, testified at the transfer hearing. Salamanca testified that she worked long hours and often left Spears in someone else's care. Salamanca

3

testified that Spears was diagnosed with attention deficit disorder when he was twelve years old and continues to take medication for it. Salamanca indicated that she did not have any trouble with Spears until he was thirteen. At that age, Spears began acting "strange and really aggressive," and he was arrested and adjudicated delinquent for possession of marijuana and drug paraphernalia. According to Salamanca, Spears was then placed on juvenile probation and went to some inpatient counseling. During his probation, Spears committed probation violations because he "did not want to be home when he was supposed to be home." Based on his violations, Spears had to wear an electronic ankle monitor. Salamanca testified that Spears was also arrested in early 2018 for third-degree battery committed against the victim herein, Chance Cooper. The first-degree battery allegedly committed against Cooper, with which Spears is now being criminally charged as an accomplice, occurred on June 12, 2018. Salamanca testified that she was in Mexico at the time of the June 12, 2018, alleged offense.

Brooke Digsby is a juvenile ombudsman. Digsby is familiar with Spears and reviewed the records from this case. Digsby testified that there were some services available to Spears if this case were transferred to juvenile court, including case-management services, an evening reporting center, or an out-of-home placement such as Sheriff's Ranch or Teen Challenge. Digsby also stated that there were some services available if this were designated as an extended juvenile jurisdiction (EJJ) case, under which the juvenile court would retain jurisdiction until Spears turned twenty-one. Under the terms of EJJ, the juvenile court retaining jurisdiction could impose an adult sentence if appropriate.

4

Officer Chase Fine of the Siloam Springs Police Department investigated the first-degree battery committed against Chance Cooper. Officer Fine testified that he was called to the scene at North Britt Street on the night of June 12, 2018, where Cooper had reportedly been shot multiple times. According to Officer Fine, this is a high-crime area. Officer Fine stated that there is a Britt Street Gang and indicated that Spears might be a member of the gang.

When Officer Fine arrived at the scene of the shooting, Spears was there and he became a suspect. Officer Fine stated that Cooper had been shot in his torso and his hand. The allegations were that Harris and Jackson had guns and that one or both of them, acting in concert with Spears, had shot Cooper. Although there was no allegation that Spears himself had a gun, the victim told the police that when Spears arrived but before shots were fired, Spears lifted up his shirt to show the victim that he did not have a gun.

Officer Fine took a Mirandized statement from Spears, during which Spears acknowledged having issues with Cooper in the past. Officer Fine stated that Spears had been arrested in March 2018 for breaking into Cooper's home, attacking him, and striking him multiple times. According to Officer Fine, Spears alleged that Cooper owed him money.

During the trial court's examination of Officer Fine, the trial court asked whether anything in the police file indicated that Spears had known what was about to happen or had participated in the shooting of Cooper. Without objection, Officer Fine testified that a Ms. Shelton was interviewed by the police and said that, prior to the shooting that night, Spears had observed Harris putting on gloves. The trial court later asked Officer Fine if,

5

from his investigation, he had information about whether Spears had seen Harris cleaning a gun that night before the shooting. Officer Fine responded that, in the interview with Ms. Shelton, she stated that a girl named Dianna told her that Spears had seen Harris cleaning a gun earlier that night. Spears objected to this statement, arguing that it was double hearsay. The trial court responded, "I phrased the question to ask if the records of the Siloam Springs Police Department reflect that they were given that information" and that "I do understand it is somewhat extrapolated."

Juvenile probation officer Michael Turic also testified. Turic testified that Spears was adjudicated delinquent for possessing drug paraphernalia in August 2016, had his probation revoked three times after that, and was adjudicated delinquent again in November 2016. Turic indicated that Spears's revocations were a combination of drug issues and curfew violations. Turic also stated that Spears was adjudicated delinquent on June 8, 2018, for the previous battery committed against Cooper, and that this adjudication was just four days prior to the first-degree battery committed against Cooper in the instant proceedings. Turic testified that there were very few services left for Spears in juvenile court.

In the trial court's order denying Spears's motion to transfer, the trial court made written findings on the factors enumerated in Ark. Code Ann. § 9-27-318(g). The trial court found:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court.

The offense of, 'Accomplice to Battery in the First Degree,' Class A felony, is a serious offense with one of the highest punishment ranges for felonies committed in the State of Arkansas.

(2)    Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.

The offense of Battery in the First Degree involved the shooting of an unarmed man, which is a violent offense alleged to have been committed in a premeditated, willful and aggressive manner. The Defendant is charged with Accomplice to Battery in the First Degree for his role 'acting in concert' with the other two individuals allegedly involved.

(3)    Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted.

The offense was against an unarmed person who suffered serious physical injury.

(4)    The culpability of the juvenile, including the level of planning and participation in the alleged offense.

Regarding the defendant's level of planning in the alleged offense, the State did not call any witnesses to testify. When asked by the Court regarding the defendant's knowledge and planning of the offense, however, Sgt. Fine testified that the records of the Siloam Springs Police Department reflect that a witness did say that the Defendant was present when the gloves were put on by the shooter just prior to the offense being committed. Also, Sgt. Fine testified that a witness said another person was with the defendant and the shooter when the shooter cleaned the gun used in the shooting just prior to the offense. (Note: these statements are considered by the Court to be hearsay).

Regarding the Defendant's participation in the shooting event itself, the testimony before the Court demonstrated that the Defendant had been in an altercation merely four (4) days earlier with the same victim. Testimony before the Court also revealed that just before the victim was shot, the Defendant approached the victim and raised his shirt to indicate to the victim that he did not have a weapon. This act of the defendant could be construed as facilitating the offense, with the defendant getting the victim's guard down so he would not flee or attempt to defend himself.

(5)    The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against person or property, and any other previous history of antisocial behavior or patterns of physical violence.

Testimony before the Court revealed that the defendant had previously been adjudicated delinquent in November 2016 for possession of a controlled substance and possession of drug paraphernalia. After his adjudication there were five separate

7

petitions filed to revoke the defendant due to the defendant's drug issues and violations of curfew and electronic monitoring. The defendant was adjudicated delinquent for a battery offense on June 8, 2018, which notably was committed against the same victim as the victim in the instant case, and only four days prior to the offenses charged in the case at bar.

(6)     The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult.

Testimony before the Court revealed that the Defendant does not have a structured home life, and the defendant was frequently left in the care of a relative while the mother worked and/or left the country.

(7)     Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday.

Testimony before the Court by the Juvenile Probation Supervisor revealed that there are "very, very few services left remaining available to this juvenile." Further, testimony revealed that the Defendant was not interested in voluntary opportunities such as "Job Corp."

(8)     Whether the juvenile acted alone or was part of a group in the commission of the alleged offense.

The testimony before the Court revealed that the defendant participated with others in the commission of this offense. He is in fact facing the enhancement charge for, "Engaging in Violent Criminal Group Activity." Further, testimony before the Court revealed that the Defendant was part of the "Britt Street Gang." The defendant professed to police that this gang affiliation was a joke, however, that is not how it was portrayed in social media.

(9)     Written reports and other materials relating to the juvenile's mental, physical, educational, and social history.

No written reports were submitted to the Court at the hearing.

(10)    Any other factors deemed relevant by the judge.

After due consideration of the above, this Court does not find that the Defendant has shown by clear and convincing evidence that his case should be transferred to the juvenile division of the Circuit Court for either delinquency

8

adjudication or, alternatively, under the extended juvenile jurisdiction designation. The Motion of the Defendant is therefore denied.

In this appeal, Spears argues that the trial court clearly erred in denying his motion to transfer the case to juvenile court, and that the trial court's decision was based on matters not presented as evidence in the hearing. We cannot say on this record that the trial court's ultimate decision denying the transfer motion was clearly erroneous. But because we agree with Spears that some of the trial court's written findings were unsupported by the competent evidence, we reverse and remand for the trial court to reconsider the transfer motion.

Spears initially argues that the trial court's order must be reversed because, in denying the transfer motion, the trial court was relying only on the allegations in the criminal information and the probable-cause-to-arrest statement prepared by the police but not introduced at the hearing. In making this argument, Spears relies on *Thompson v. State*, 330 Ark. 746, 957 S.W.2d 1 (1998). However, we reject this argument because *Thompson* is clearly distinguishable from this case.

In *Thompson*, the juvenile appellant was charged as an adult with aggravated assault, kidnapping, and theft of property. According to the information, a handgun was used in these crimes. During the transfer hearing, Thompson's mother testified that her son had no prior charges in either juvenile or circuit court, that he attended school regularly, and that he did not "run the streets." The State did not put on any evidence during the hearing, but instead relied solely on the allegations asserted in the information. The trial court denied the transfer motion, and Thompson appealed.

9

In *Thompson*, the supreme court stated that it was well settled that a juvenile may be tried as an adult solely based on the serious and violent nature of the offense. However, the supreme court held that the trial court may not rely solely on the allegations contained in the information to support its finding that a juvenile should be tried as an adult due to the serious and violent nature of the crime. In *Thompson*, the supreme court reversed the trial court's refusal to transfer the case because there was no testimony to substantiate the serious and violent nature of the offenses charged. However, in that case the State put on no evidence whatsoever at the hearing. The case at bar is distinguishable because the State did not rely solely on the seriousness and violent nature of the offense, and at the transfer hearing the State presented proof on that factor as well as other factors bearing on the trial court's decision.

In the instant case the State presented evidence that Cooper had been shot in his torso and his hand, that Spears had lifted his shirt to show Cooper he did not have a gun before others shot Cooper, and that Spears had physically assaulted Cooper on a prior recent occasion. The State also presented proof that Spears had an extensive prior history in the juvenile court system, having been adjudicated delinquent on multiple occasions including once for third-degree battery committed against this same victim. There was also testimony that there were very few services left that could be provided to Spears that would likely rehabilitate him. Contrary to Spears's contention, the trial court did not rely solely on the serious and violent nature of the offenses as charged in the criminal information, and there was ample proof presented to support a finding that jurisdiction should be retained in the criminal division of circuit court.

Spears next claims that, to the extent the first-degree battery was committed in a violent and aggressive manner, it was not shown to be done so by Spears because the testimony established that he had no weapon during the altercation and was merely present. However, this argument lacks merit because the fact that Spears was charged as an accomplice does not detract from the violent and serious nature of the crime. In *Guy v. State*, 323 Ark. 649, 916 S.W.2d 760 (1996), our supreme court held that it is of no consequence that the appellant may or may not have personally used a weapon, as his association with the use of a weapon in the course of the crimes is sufficient to satisfy the violence criterion.

Spears also takes issue with the trial court's comment from the bench during the transfer hearing that the charge against Spears should have been an accomplice to attempted murder, and in using this finding to establish that the charge was serious. However, Spears misquotes the trial court. From the bench, the trial court stated only that Spears *could* be charged as an accomplice to attempted murder. And this comment was not made part of the trial court's written findings in support of its denial of Spears's transfer motion. Moreover, it cannot be disputed that first-degree battery, with which Spears was charged, is a serious and violent offense. Thus, we conclude that the trial court's observation from the bench resulted in no reversible error.

Although we do not agree with Spears's contention that the trial court's ultimate decision denying the transfer motion was clearly erroneous, we do agree with Spears's claim that some of the trial court's written findings in its order were unsupported by the competent evidence. As required by Ark. Code Ann. § 9-27-318(h)(1), the trial court made written

11

findings on each of the factors set forth in subsection (g). However, because some of the trial court's findings were inconsistent with the proof presented at the hearing, we reverse and remand for reconsideration of the juvenile-transfer motion.

Our supreme court has held that, in a juvenile-transfer case, inadmissible hearsay admitted without objection may constitute substantial evidence to support a ruling. *See Brown v. State*, 330 Ark. 603, 954 S.W.2d 273 (1997). At the transfer hearing, Officer Fine testified, without objection, that a witness had reported Spears being present when the shooter put on gloves before the commission of the crime. Because there was no objection to this testimony, it was properly considered by the trial court. However, in the trial court's written findings concerning Spears's level of planning of the alleged offense, the trial court also relied on Officer Fine's testimony that a witness said another person said she saw Spears observe the shooter cleaning the gun prior to the offense. This testimony was properly objected to by Spears on the grounds of double hearsay, and the trial court should not have included it in its written findings or considered it when ruling on Spears's transfer motion.

In addition to the above improper finding, there were two other findings in the trial court's order that were inconsistent with the evidence. In particular, the trial court found that Spears had been in an altercation with the victim just four days before the victim was shot. The testimony instead showed that the altercation had occurred three months earlier and that Spears was adjudicated delinquent for that offense four days before the shooting. Finally, under the trial court's analysis of whether Spears acted alone or as part of a group, the trial court found from the testimony that Spears was part of the Britt Street Gang. This written finding does not accurately reflect Officer Fine's testimony, as Officer Fine testified

12

only that Spears *might* be a member of this gang but that he had not verified this fact, and that Spears had denied any gang affiliation. Officer Fine stated only that there had been unverified reports of social media posts with alleged gang signs.

The trial court's order contained accurate written findings on several of the statutory factors that could support its denial of Spears's transfer motion. However, as discussed above, some of the trial court's written findings reflected improper considerations. We recognize that the trial court is not required to give equal weight to each of the factors. *See K.O.P.*, *supra.* However, in the present matter, we are unable to tell how much weight the trial court gave to its accurate findings and how much it gave to its findings that were inconsistent with the proof at the hearing. For this reason, we reverse and remand with instructions to reconsider the transfer motion, giving proper consideration to only the competent proof presented at the transfer hearing as it relates to the statutory factors. *See Z.T. v. State*, 2015 Ark. App. 282.

Reversed and remanded for reconsideration of juvenile-transfer motion.

BROWN, J., agrees.

WHITEAKER, J., concurs.

**PHILLIP T. WHITEAKER, Judge, concurring**. I agree with the majority opinion. The circuit court denied Spears's motion to transfer and entered an order that clearly contains statements of fact that do not accurately reflect the testimony and evidence presented at the transfer hearing. Because we cannot determine what weight the court gave to these inaccurate findings, I agree with the majority that the case should be reversed and remanded for reconsideration.

13

I write separately, however, to express my opinion that the court further erred in the consideration of inadmissible hearsay evidence. At the hearing, the court heard evidence concerning hearsay statements. One of those statements—the double-hearsay statement—was objected to by counsel. The court correctly identified these statements as hearsay but relied on them in its order denying transfer. I conclude that the trial court erred in this reliance.

Should inadmissible hearsay evidence be considered in a juvenile transfer hearing? In both *Sanders v. State*, 326 Ark. 415, 421, 932 S.W.2d 315, 318–19 (1996), and *Brown v. State*, 330 Ark. 603, 606, 954 S.W.2d 273, 274 (1997), our supreme court ruled that inadmissible "hearsay admitted without objection may constitute substantial evidence to support a ruling" in a juvenile transfer hearing. In those cases, defense counsel did not object to the hearsay; therefore, the trial court did not err in considering it. By implication, does this mean that if counsel had objected, the trial court would have erred in considering it? In the twenty-plus years since these decisions, we have no further opinions putting this implication to rest. I opine that it is time to resolve the matter. In my opinion, the Arkansas Rules of Evidence are applicable in juvenile-transfer hearings. *See McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997) (Brown, J., concurring) (Justices Brown and Imber opining that the Arkansas Rules of Evidence should apply to juvenile-transfer hearings). Here, counsel clearly objected to the hearsay, to which the court agreed. Under the Arkansas Rules of Evidence, the court erred in giving it consideration in the juvenile-transfer hearing.

*Lisa-Marie Norris*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael L. Yarbrough*, Ass't Att'y Gen., for appellee.