Cite as 2021 Ark. App. 223

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-20-485

|  |  |
|---|---|
| LADARIUS BURNETTE<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** May 5, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-19-4979]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Ladarius Darnell Burnette was charged in the criminal division of circuit court with two counts of first-degree battery. These offenses were allegedly committed on November 3, 2019, when Ladarius was sixteen years old. The two victims, C.S. and G.W., were also minors. Ladarius was charged pursuant to Ark. Code Ann. § 5-13-201(a)(8) (Supp. 2019), which provides that a person commits first-degree battery if, with the purpose of causing physical injury to another person, the person causes physical injury to any person by means of a firearm. The State also sought sentence enhancements for using a firearm in the commission of a felony and committing a felony in the presence of a child.

Ladarius filed a motion to transfer the case to the juvenile division of circuit court. After a hearing, the trial court entered an order denying Ladarius's motion to transfer making written findings in support of its decision.

Ladarius now appeals from the order denying his motion to transfer to juvenile court. On appeal, Ladarius argues that the trial court's denial of his motion to transfer was clearly erroneous. We affirm.

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9–27–318(c)(1) (Repl. 2020). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9–27–318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court. *Woods v. State*, 2018 Ark. App. 576, 565 S.W.3d 124. The trial court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9–27–318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Z.T. v. State*, 2015 Ark. App. 282. We will not reverse a trial court's determination of whether to transfer a case unless the decision is clearly erroneous. *Id.* A finding is clearly erroneous when, after reviewing the evidence, the appellate court is left with a firm and definite conviction that a mistake was made. *Lewis v. State*, 2020 Ark. App. 123, 596 S.W.3d 43.

At a juvenile-transfer hearing, the trial court is required to consider all the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). Pursuant to Arkansas Code Annotated section 9-27-318(h)(1), the trial court shall make written findings on all the factors set forth above. However, there is no requirement that proof be introduced against the juvenile on each factor, and the trial court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *K.O.P. v. State*, 2013 Ark. App. 667.

Kimberly Burnette, appellant's mother, testified at the transfer hearing. Kimberly stated that Ladarius is the youngest of her five children, and she described Ladarius as a "good kid" who was helpful around the house. Kimberly acknowledged that she had previously been in prison for robbery and that on the day Ladarius committed the alleged offenses herein, she was incarcerated on a theft charge. She also stated that Ladarius's father has never been a part of his life. As a result, Ladarius often lived with his grandmother, Marie Burnette. Kimberly testified that, should Ladarius be released from jail, he would live with his grandmother.

Kimberly testified that Ladarius has a son, who is now two years old. His son is being raised by the child's mother. According to Kimberly, Ladarius is very involved in his son's life.

Kimberly testified that it was very traumatic for Ladarius to grow up without a father. She further indicated that Ladarius was traumatized when his older brother was murdered a few years ago. Kimberly stated that, after Ladarius's brother was killed, Ladarius was "very saddened" and it "put a lot of fury in him." Kimberly stated that Ladarius never got into trouble until after his brother died. Kimberly stated that Ladarius, who was seventeen at the time of the transfer hearing, is "still a child."

Marie Burnette, Ladarius's grandmother, also testified. Marie described Ladarius as "a very good grandson" who is smart, helpful, and obedient. Marie has a significant role in Ladarius's life, and stated that Ladarius either stays with her, Ladarius's mother, or Ladarius's adult sister. Marie stated that on the day of the offenses alleged herein, Ladarius was not

staying with her, and she thought Ladarius was staying with his mother. However, Ladarius's mother had previously testified that she was incarcerated at that time.

Marie testified that the murder of Ladarius's older brother changed Ladarius. She stated that Ladarius got depressed and angry because "they killed him for nothing." Marie also stated that Ladarius had been bullied in school.

Brooke Digby, a juvenile ombudsman, testified about potential services available to Ladarius in the juvenile system. Ms. Digby indicated that Ladarius could be incarcerated in the Division of Youth Services (DHS), where he may be eligible for psychiatric therapy services. Ms. Digby also discussed mentoring programs and prevention programs for at-risk youths. Ms. Digby thought Ladarius would be eligible for CSTP (Civilian Student Training Program), which is available to youths age thirteen through seventeen, as well as Youth Challenge, which is available to youths age sixteen through eighteen. Ms. Digby also stated that Extended Juvenile Jurisdiction (EJJ) was available. Ms. Digby explained that under EJJ, the offender could receive services until age twenty-one and that if the offender was not amenable to treatment or committed another offense, an adult sentence could be imposed on him.

Adriean Sanders is a juvenile probation officer. Mr. Sanders stated that Ladarius has a prior history with the juvenile-justice system that consists of two fleeing charges. Mr. Sanders stated that the case involving these charges remained pending, and that after a

hearing on October 31, 2019, the juvenile court had given Ladarius a "six-month pass contingent he pick up no new charges."[1]

Mr. Sanders testified that Ladarius's traumatic history, including the absence of a father figure, a mother who had been incarcerated, and the death of his older brother, would factor into his eligibility for programs in the juvenile system. Mr. Sanders stated that he would recommend Ladarius for programs to address this trauma, which included anger management, individual therapy, and life skills.

J.H. testified about what happened on November 3, 2019—the day that Ladarius allegedly committed the first-degree batteries. J.H. testified that she was fifteen years old at the time and rode with some friends to a party at a hotel suite the night before. One of J.H.'s friends from school, C.S., arrived at the hotel suite at about 1:00 a.m. on November 3. J.H. went to bed sometime after that and woke up around 10:00 a.m. to check out of the hotel. J.H. stated that C.S. woke up, put his clothes on, and proceeded to the living area of the hotel suite. J.H. was in the bathroom when she heard shooting. J.H. stated that she heard a lot of gunshots but did not see who was shooting. Sometime after the shooting stopped, J.H. came out of the bathroom and found C.S. lying on the kitchen floor near the door to the suite. C.S. was bleeding from multiple gunshot wounds. J.H. stated that another youth, G.W., had also been shot. J.H. called the police, and the victims were taken to the hospital.

---

[1]The alleged first–degree-battery charges against Ladarius were committed just three days after this hearing.

6

J.H. testified that she never saw C.S. with a gun the night before the shooting or that morning. She had, however, seen a gun on the living room table, although she did not know to whom it belonged. J.H. indicated that the shots she heard did not come from different guns. She stated, "I only heard one [gun] and it was a lot of gunshots."

Ladarius became a suspect and was arrested by the police the day after the shootings. When he was arrested, Ladarius was in possession of a semiautomatic 9 mm pistol.

Officer Roy Williams conducted a Mirandized interview of Ladarius. Ladarius acknowledged having been at the hotel suite that night and that morning. In his initial statement to the police, Ladarius claimed that he was in another room when he heard shots. He then supposedly ran out to find C.S. lying on the floor before he himself ran from the hotel suite.

However, later in the interview, Ladarius changed his story and admitted shooting C.S., although claiming it in was self-defense. Ladarius told the police that he heard some commotion, went into the living area, and saw C.S. with a gun. According to Ladarius, C.S. started shooting first and fired about three shots. Ladarius stated that he then returned fire, shooting at C.S. nine or ten times. Ladarius claimed that it was C.S., and not he, who had shot G.W.

In the police search of the hotel suite, they found seventeen 9 mm shell casings and multiple bullet holes. According to Officer Williams, no other shell casings were found, nor was another gun recovered from the crime scene.

7

Argie Gay, C.S.'s guardian and maternal grandmother, testified that C.S. underwent surgery and was in intensive care for three days as a result of his multiple gunshot wounds. She further stated that C.S. continues to receive medical treatment.

In the trial court's order denying Ladarius's motion to transfer, the trial court made written findings on the factors enumerated in Ark. Code Ann. § 9-27-318(g). The trial court found:

1. The alleged offense is serious as defendant is charged with Battery First Degree (X2), class B felony, and these offenses require prosecution in the Adult Criminal Division of Circuit Court.

2. The alleged offense was committed in an aggressive and willful manner as defendant allegedly shot one minor victim approximately seven times. Detective Roy Williams testified that there were multiple bullet holes at the scene and the Court found his testimony to be authentic and convincing.

3. The alleged offense was committed against a person. One minor victim had to be placed in the intensive care unit at the hospital for multiple gunshot wounds.

4. There was no evidence put on as to the level of planning the offense.

5. Defendant has one pending case in Juvenile Division of Circuit Court for Fleeing, class D felony, and Fleeing, class C misdemeanor. Despite arguments of Defense counsel, the Court did not give the Defendant's past juvenile history the greatest weight. The Court was swayed by the allegations of the multiple gun shots and body damage of the victim.

6. Defendant's mother and grandmother testified that Defendant is able to complete daily tasks and help them around the house. Defendant does have a minor child that he sometimes helps take care of. Defendant's grandmother testified that she believes Defendant is still a child himself. Defendant was present at a hotel room past his curfew on the night of the alleged offense and Defendant's grandmother and mother both testified that they did not give him permission to be there. Defendant's mother testified that she has known Defendant to be around guns. The Court finds that Defendant does have a desire to be treated as an adult.

7. The Division of Youth Services is available to defendant. There may be mental health inpatient treatment facilities that defendant qualifies for and are available to him in the Juvenile Division of Circuit Court. There are other rehabilitative

8

services that may be available to defendant in the Juvenile Division of Circuit Court; for example, the gun violence course or CSTP. However, the Court was not convinced that there were many options available to defendant because of his current charges and whether the facilities or programs would be likely to rehabilitate defendant before his twenty-first birthday.

8. It is unknown whether the Defendant acted alone or as part of a group in the commissions of this alleged offense, but there are no co-defendants named in the criminal information.

9. There were no written reports or other materials presented pertaining to defendant's mental, physical, education, or social history.

In this appeal, Ladarius argues that the trial court clearly erred in denying his motion to transfer the case to juvenile court. Specifically, Ladarius contends that the trial court failed to give sufficient weight to the trauma he had endured throughout his life. Ladarius states that the details of his chaotic and unstable childhood were documented through the testimony of his mother and grandmother. According to Ladarius, this testimony detailed crucial information about his home environment, emotional state, social history, and pattern of living. Ladarius asserts that within his first sixteen years, he endured an absent father, the death of a brother, an incarcerated mother, and being bullied at school. Ladarius notes that the trial court made no findings about the trauma he has endured nor did the trial court indicate that these traumatic events factored into its decision. He argues that because proper weight was not given to the trauma he has suffered, we should reverse the trial court's order and remand for the charges to be transferred to the juvenile division of circuit court.

Having reviewed the record, we conclude that the trial court's decision denying Ladarius's transfer motion was not clearly erroneous. The trial court fulfilled its obligation to consider and make written findings on all the factors set forth in Ark. Code Ann. § 9-27-318(g). The trial court is not required to give equal weight to each of these statutory

9

factors, and it may use its discretion in deciding the weight to be afforded each factor. *Woods*, *supra*.

As found by the trial court, the two counts of first-degree battery against Ladarius are serious charges. The alleged offenses were committed against persons in an aggressive and willful manner—Ladarius shot one of the victims multiple times requiring surgery and hospitalization in the intensive care unit. Although Ladarius claimed self-defense, the seventeen shell casings recovered from the crime scene all came from a 9 mm pistol, and no other gun was found.

Our supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. *Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004). While the traumatic events in Ladarius's life viewed in a vacuum may have tended to favor juvenile jurisdiction, the serious and violent nature of these alleged offenses was alone sufficient to deny his juvenile-transfer motion. We are not left with a firm and definite conviction that the trial court made a mistake in denying appellant's motion to transfer the case to juvenile court. Accordingly, we affirm the trial court's order.

Affirmed.

GLADWIN and BARRETT, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.

10