Cite as 2020 Ark. App. 318

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–19–935

| | | |
|---|---|---|
| GABRIEL E. WALTON | APPELLANT | **Opinion Delivered:** May 27, 2020 |
| V. | | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. 16JCR-18-1354] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE TONYA M. ALEXANDER, JUDGE |
| | | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Gabriel E. Walton appeals the Craighead County Circuit Court order denying his motion to transfer his case to the juvenile division of the circuit court. On appeal, he argues that the circuit court's denial of his transfer motion was clearly erroneous. We affirm.

On November 14, 2018, the State charged Gabriel with two counts of residential burglary, arson, theft of property-firearm, and theft of property less than $1000. The charges related to incidents at two residences on October 8 and 9, 2018. On December 18, Gabriel filed a motion to transfer his case to the juvenile division of the circuit court. The court held a transfer hearing on June 26, 2019.

Amy Powell with the Craighead County Juvenile Department testified that she began supervising Gabriel in April 2017 when his case was transferred to Craighead County after

his family moved from Crittenden County. She explained that Gabriel was being supervised in Crittenden County for second-degree sexual assault of his grandmother. She stated that in July 2017, Gabriel had been assessed at a moderate risk to reoffend but that a hearing had not been held on whether he had to register as a sex offender.

Powell testified that Gabriel had been released from sex-offender counseling, but two months later, in September 2017, he was charged with reckless burning at McArthur Junior High School. She stated that the allegation resulted in a true finding and that he was placed on probation, fined, and ordered to complete eighty hours of public service and a fire-safety course at the Jonesboro Fire Department. Powell explained that Gabriel completed some public service, but in May 2018, he was charged with criminal mischief for throwing rocks at cars on the highway during his service. She testified that he had also received probation violations for fleeing from the police in January 2018 and another violation for absconding to Alabama in August 2018. She noted that he had been sentenced to thirty days detention for criminal mischief and for fleeing from police.

As to the current charges, Powell stated that two other individuals had been charged along with Gabriel. She explained that they had set a house on fire and that items from the home, specifically a lighter and cuff links, were found in Gabriel's room at his home. She testified that Gabriel had "zero remorse or guilt" and that he is emotionally disconnected. She further stated that Gabriel had told her that his accomplice had agreed "to take the fall for him."

When asked whether Craighead County had any rehabilitative facilities available for Gabriel, Powell noted that there are two local facilities, but she stated that his status as a sex

2

offender may prevent him from being admitted. She also said that Gabriel would turn eighteen in a few months and could not qualify for a juvenile youth facility after that time. Powell did not believe that counseling would benefit Gabriel, and she pointed out that his criminal behavior had escalated during her supervision.

Jennifer Walton, Gabriel's mother, testified that Gabriel's birthday is October 12, 2001, and that he has six younger siblings. She stated that Gabriel attended public school from kindergarten through third grade but that she and her husband began homeschooling him after third grade. She explained that he had returned to public school in eighth or ninth grade on the basis of his counselor's recommendation after he was charged with sexual assault. Jennifer stated that Gabriel struggled socially in public school, which led to his criminal charges. She testified that he is smart but that he makes poor choices and is easily influenced by his peers. She stated that he is immature because she and her husband had sheltered him with their strong religious beliefs.

Brooke Digby, the juvenile ombudsman, testified that Gabriel had not received all the rehabilitative services available in the juvenile court. She stated that Gabriel had not been to a boot camp such as Civilian Student Training Program or Youth Challenge and that there had been no testimony concerning parenting classes, mentoring programs, the Department of Youth Services (DYS), or nonprofit group homes. She noted that DYS had a plethora of services and that those services are available until age twenty-one. She recognized that Gabriel needed to take advantage of those opportunities and that some services may not be available to him because of his previous charges.

Silas Orbison testified that his home was burglarized during the day on October 9, 2018, and that iPads, phone chargers, a hoverboard, firearms, and firearm magazines were taken but that most of the items had been recovered. He noted that his house is about one hundred yards from the Patton house. He further testified that five of the stolen firearms had been discovered in the area between his property and the Patton property.

Michael Whitby, a captain in the fire marshal's department of the Jonesboro Fire Department, testified that he investigated a fire at the Patton residence that occurred on October 8, 2018. He explained that the house had been burglarized and that multiple fires had been set throughout the house using charcoal lighter fluid, which caused significant damage to the living room and smoke damage to the entire house. He further noted that books from a wall shelf had been thrown onto the floor prior to the fire. He testified that the house had been abandoned for about five years but that Marsha Patton had entered the home during the fire and later died.[1] He further testified that a lighter and cufflinks from the Patton house were found in Gabriel's room. He noted that the lighter and cufflinks did not have fire damage.

Bryan Carter, also with the Jonesboro Fire Department, testified that he also investigated the fire at the Patton house. He stated that the day after the fire, he was at the Patton house when a fellow officer spotted three juveniles walking in the neighborhood during school hours. He explained that they detained one of the juveniles and found a firearm from the Orbison house in his bag. He noted that the two other juveniles fled.

---

[1]An autopsy ruled Marsha Patton's death a homicide, but no homicide charges had been filed at the time of the transfer hearing.

Joe Robinson, a detective for the Jonesboro Police Department, testified that he helped investigate the crimes at the Orbison and Patton houses. He stated that he was in the neighborhood of the residences when he learned that the fire marshals had encountered three juvenile suspects in the area. He explained that two suspects fled from the officers but that they detained the third suspect and found a firearm from the Orbison house on him. He further testified that Gabriel was identified as one of the suspects who had fled from the officers. He also stated that firearms taken from the Orbison house were found in a wooded area near the Patton property.

Following the hearing, on November 4, 2019, the circuit court entered an order denying Gabriel's transfer motion:

[P]ursuant to Arkansas Code Annotate § 9-27-318, the Court considered the enumerated factors in making its decision to deny transfer to the juvenile division:

a. **The seriousness of the alleged offenses and whether the protection of society requires prosecution in the Criminal Division of Circuit Court.** It is undisputed that Arson and Residential Burglary are serious offenses. The Court finds, that the protection of society requires that this Defendant be prosecuted in the Criminal Division of the Circuit Court.

b. **Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner**. The Court finds that the actions of committing the Arson, Residential Burglary, and Theft were both willful and premeditated based upon the testimony and evidence presented. Defendant and his accomplices are alleged to have burglarized homes in broad daylight, came back to the scene of the crime to retrieve stolen property left earlier, and set a fire to destroy evidence of their crimes.

c. **Whether the offense was against a person or property with greater weight being given to offenses against persons.** This was an offense against property. It is tragic that a death occurred.

d. **The culpability of the juvenile, including the level of planning and participation in the alleged offense.** G.W.'s culpability is evident as well as the level of planning, and participation with two other juveniles. Over a two-day period,

5

G.W. and his accomplices are alleged to have committed burglaries and thefts in the same neighborhood. G.W. and his accomplices, hid the spoils of the burglaries, along a fence line and where seen after attempting to retrieve the items as firefighters were investigating the arson.

e. **The previous history of the juvenile.** At the age of fourteen, G.W. was adjudicated delinquent for the offense of sexual assault of female family member. His case was transferred to the Craighead County Juvenile Court from another county in April 2017. In counseling, G.W. admitted that the attack was premeditated. G.W. was ordered into sex offender specific treatment on an outpatient basis through Consolidated Youth Services (CYS) of which counseling as part of the treatment ordered. His parents objected to the counselor on religious grounds. The parents cooperated with second counselor, but appointments were missed.

In September 2017, G.W. set fire to a trash can at a local junior high school and was adjudicated delinquent on a charge of reckless burning in January 2018. Between the setting of the trash can on fire and his adjudication, G.W. made threats against a teacher and ran away to Alabama. G.W. fought with police officers, had his previously imposed probation revoked, and was ordered to serve jail time and to perform public service work. Subsequent to the January 2018 adjudication, G.W. was placed on intensive supervision and ordered to complete public service work. While performing public service work, of cleaning an overpass, under the supervision of law enforcement officers, G.W. threw rocks below, striking passing vehicles. He was charged with committing the offenses of criminal mischief and disorderly conduct. In August 2018, G.W. ran away again and was subsequently brought back to Craighead County.

f. **The sophistication or maturity of the juvenile as determined by a consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult.**
G.W. desires to be treated as an adult. This is evidenced by his running away to Alabama to be with a girl that he met on Facebook and his refusal to respect authority. His home environment was described as a good environment with younger siblings who live with his mother and father. The court does not find that this is a particularly sophisticated juvenile, but that he has an overwhelming desire to be treated as an adult.

g. **Whether there are facilities or programs available to the Judge of the Juvenile Division of the Circuit Court that are likely to rehabilitate the juvenile before expiration of the juvenile's twenty-first (21) birthday.**
The Court heard testimony that there are facilities available to offer treatment to G.W. However, the juvenile's attitude towards authority and unwillingness to cooperate and complete treatment, form the bases of the Court's conclusion that

although programs are available, they are unlikely to rehabilitate G.W. Furthermore, not all of the programs would be available to the juvenile because of the prior adjudication on the sex offense.

h. **Whether the juvenile acted alone or was part of a group in the commission of the alleged offense.**
G.W. committed the alleged offenses with two other juveniles.

[i.] **Written reports and other materials relating to the juvenile's mental, physical, educational, and social history.**
Not much was introduced regarding this factor other than the fact that G.W. led a sheltered life. That alone is not enough to warrant the transfer to juvenile court.

j. **Any other factors deemed relevant by the judge.**
G.W. did not avail himself of the treatment ordered. He and his parents did not cooperate with treatment. G.W. instead ran away, committed additional offenses while on probation, and generally showed a lack of respect for authority.

Gabriel timely appealed the order to this court.

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of the circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9–27–318(c)(1) (Repl. 2015). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9–27–318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court. *Kiser v. State*, 2016 Ark. App. 198, 487 S.W.3d 374. The circuit court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9–27–318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be

established. *Woods v. State*, 2018 Ark. App. 576, 565 S.W.3d 124. We will not reverse a circuit court's determination of whether to transfer a case unless the decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

At a juvenile-transfer hearing, the circuit court is required to consider all the factors set forth in Arkansas Code Annotated section 9-27-318(g). Pursuant to Arkansas Code Annotated § 9-27-318(h)(1), a circuit court shall make written findings on all of the factors. However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *K.O.P. v. State*, 2013 Ark. App. 667.

On appeal, Gabriel argues that the circuit court's denial of his transfer motion was clearly erroneous. He claims that the court failed to consider and make findings on all the factors in Arkansas Code Annotated § 9-27-318(g) and that the court did not offer sufficient reasoning for its findings. He further argues that the circuit court made findings inconsistent with the evidence.

We hold that the circuit court's denial of Gabriel's transfer motion was not clearly erroneous. Here, as required, the court considered each factor in Arkansas Code Annotated § 9-27-318(g), made findings on each factor, and its findings were supported by the evidence. Gabriel claims that the court's findings are inconsistent with the evidence because the State presented no evidence that he removed anything from the burglarized homes, that he set the fire to destroy evidence, that the stolen items were found near the property, or

that he acted with two other individuals. We disagree. The State presented testimony that Gabriel participated with two other individuals in the burglary of two residences and the arson of one of those residences. Further, there was testimony that items from the Patton house were found in Gabriel's room and that firearms stolen from the Orbison house were found adjacent to the property.

Gabriel further asserts that the court should have granted his transfer motion because the charged crimes are only property offenses, they are not aggressive or violent offenses, and the juvenile ombudsman testified about numerous services available to rehabilitate him. While there was evidence presented that may arguably weigh in favor of the transfer motion, there were also factors that weigh in favor of denying the motion. We will not reweigh the evidence on appeal, and the circuit court is not required to give equal weight to each factor. *Lewis v. State*, 2020 Ark. App. 124, 596 S.W.3d 43. We therefore affirm the circuit court's denial of Gabriel's motion to transfer his case to the juvenile division of the circuit court.

Affirmed.

VIRDEN and SWITZER, JJ., agree.

*W. Scott Davidson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.