Cite as 2023 Ark. App. 71

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-22-207

| | |
|---|---|
| TERRELL HOWARD<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 15, 2023<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-21-3278]<br><br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

In this interlocutory appeal, Terrell Howard appeals from the order of the Pulaski County Circuit Court denying his motion to transfer his criminal charge to juvenile division of the circuit court. He argues that the court's findings were clearly erroneous. We affirm.

Howard was charged with first-degree murder, a Class Y felony, in the death of Timothy Beeles II. Howard was fifteen years old when Beeles was killed on July 11, 2021. Howard was charged as an adult in circuit court, and he moved to transfer his case to juvenile court. A transfer hearing was held on January 21, 2022, at which time Howard was still fifteen years old.

Lieutenant Cassie Blackerby with the Jacksonville Police Department testified that she was assigned to work a homicide that occurred around 7:00 p.m. on July 11, 2021, at First Arkansas Bank and Trust. When the police arrived, they found a young male with three gunshot wounds lying in the parking lot. The male, who was not armed, was identified as Beeles.

Blackerby testified that video footage was obtained from the bank's surveillance cameras from which officers were able to identify Howard as the person who had shot Beeles, explaining that the Jacksonville Police Department had prior contact with Howard that included six previous arrests. The video of the shooting and still shots from the video were admitted into evidence. Blackerby said that Howard was taken into custody about an hour after the shooting. The clothes he was wearing at that time matched the clothes that the shooter in the video was wearing.

Howard's juvenile probation officer, Jennie Promack, testified that she began supervising him in February 2021. She stated that he had previously been supervised in Pulaski County by Officer Bell from 2018 to 2020. She said his prior charges included misdemeanor theft of property for which he was on probation. Probation was revoked due to curfew violation and school absences. Howard also had a theft-by-receiving charge and was placed on a GPS monitor, which he cut off. He was then detained and sent to the Civilian Student Training Program (CSTP), which is a military-based rigorous program with intensive supervision. The program has academic, physical-fitness, and community-service components along with a mentorship program. Howard graduated from CSTP but continued to pick up new charges. He had a felony theft-by-receiving charge and was placed on probation, which was later revoked. He also had charges from Lonoke County for fleeing, theft by receiving, and misdemeanor attempted breaking or entering, which were transferred to Pulaski County where Howard resided, as well as another theft-by-receiving charge in Pulaski County.

Promack testified that Howard was sent to detention on several occasions. She said that Howard had not complied with the conditions of probation, such as school attendance and curfew. When he was not compliant, 24/7 home confinement was ordered but he continued to

violate the conditions. Promack said that Howard was then placed on electronic monitoring, which he cut from his ankle. Promack testified that CSTP was no longer available because a person can attend only once. She explained that there was a referral for Howard to have a psychosocial assessment after which medication and counseling were recommended, and the "ball was rolling" on that in 2021, but he was put on a waiting list. She said that Howard has a referral for life-skills classes as well as case-management services that would provide "another pair of eyes" on a juvenile. Promack acknowledged that juvenile probation had done everything it could for Howard. She stated that the services offered by Department of Youth Services (DYS) and Extended Juvenile Jurisdiction (EJJ) require compliance by the person they are trying to help, and appellant's history showed a lack of compliance.

In regard to his school records, Promack said that Howard had disciplinary issues involving attendance, bullying, insubordination, harassment, disorderly conduct, disruptive behavior, and noncompliance with campus rules, such as leaving without permission. Howard had no violations for drug use, possession of a firearm, or gun-related crimes. Promack did not perceive that Howard is at a high risk for violence but only juvenile delinquency. She testified that a SAVRY, which is a risk assessment to determine violence in youth, was conducted on Howard. The conclusion was that Howard is at a high risk for violence.

On cross-examination, Promack explained that she was surprised when the SAVRY came back for violence because she thought Howard would just be high risk for reoffending property crimes. She said that when Howard was in a structured environment, such as detention or CSTP, he thrived and made progress. The training school at Alexander was an option for Howard under EJJ. Promack had interactions with Howard's mom, who she said was a good reporter of his

3

violations. As for his psychosocial assessment, Promack stated that Howard was diagnosed with disruptive impulse disorder and, "to a lesser degree," conduct disorder. Promack said that as a result of his diagnosis, counseling was recommended, and Howard needed an assessment to determine his need for medication. She stated that something had been scheduled for April 26, 2021, but the family rescheduled, and Howard's case was closed in May. She said that if the case were transferred to the juvenile division, there was no guarantee that the court would order him to DYS, but in her experience, most homicides get sent to DYS. Her recommendation was to send Howard to DYS.

Toni Rose, the major in charge of operations for the Pulaski County Detention Center, testified that Howard had several disciplinary problems while he was at the detention center. These included a fight with another student while in the classroom and an incident in which Howard "smacked" an officer on the buttocks when she was proceeding to put him in his cell.

Ronnie Routh, director of the Pulaski County Juvenile Detention Unit, testified that Howard had been in the detention center six times since 2019.

Denise Howard Biggs, Howard's mother, testified that he is the youngest of her four children, all of whom had been through the juvenile system. She said that Howard acts like a kid and does not make good decisions. Biggs stated that she has strict rules, but Howard does not always obey the rules. Howard's sister, Denisha Howard, testified that he helps out a lot around the house and does his chores.

Brooke Digby, the juvenile ombudsman for the Pulaski County Public Defender Commission, testified about the opportunities available to Howard in the juvenile system.

4

Although she acknowledged that Howard had been to CSTP, she believed he could benefit from the transfer of his case to EJJ, including commitment to DYS.

At the conclusion of the hearing, the circuit court denied the motion to transfer and entered written findings in an order entered January 27, 2021. Howard filed a timely notice of appeal on February 3.

Under Arkansas law, a prosecuting attorney may charge a juvenile in the criminal division of circuit court if the juvenile was fourteen or fifteen years old when he or she engaged in conduct that, if committed by an adult, would be first-degree murder. Ark. Code Ann. § 9-27-318(c)(2)(B) (Repl. 2020). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court. *Walton v. State*, 2020 Ark. App. 318, 602 S.W.3d 754. The circuit court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Walton, supra*. We will not reverse a circuit court's determination whether to transfer a case unless the decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

At a juvenile-transfer hearing, the circuit court is required to consider all the factors set forth in Arkansas Code Annotated section 9-27-318(g), which are as follows:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Pursuant to Arkansas Code Annotated section 9-27-318(h)(1), the circuit court shall make written findings on all the factors. However, there is no requirement that proof be introduced

6

against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *Walton, supra.*

Following the hearing, the circuit court entered an order denying the request for transfer to juvenile court, which contained the following findings:

1. The seriousness of the alleged offense of Murder in the First Degree does require prosecution in the criminal division of Circuit Court;

2. The alleged offense was committed in an aggressive, violent, premeditated and willful manner. In the camera footage, the suspect identified as Terrell Howard arrived at the scene of the offense and engaged in a fist fight with the victim and later fired a gun at the victim;

3. The offense was against a person in which physical injury resulted. The victim was found deceased with three gunshot wounds;

4. Howard was culpable in that he participated in the allege offense. The camera footage from the security camera of the First Arkansas Bank showed a suspect identified as Terrell Howard was present at the scene of the crime and shot a gun during the alleged offense;

5. Jennie Promack, Juvenile Probation Officer, testified about several of Howard's eight cases adjudicated within the juvenile system. On December 6, 2018, the Juvenile Court dismissed the charge of Theft of Property, Class D Felony in case 60N-18-838. In 60N-18-1073, Howard was placed on probation for a Theft of Property, Class A Misdemeanor offense. His probation was revoked due to multiple school absences and curfew violations. Howard was arrested on a new charge, and he was then placed on a GPS monitor. Later, he removed his GPS monitor and was detained. As a result, Howard was placed in the C-Step program and he successfully graduated from the program. Howard had several other cases after the completion of the C-Step program where he had been placed on probation such as case 60N-19-714, Theft by Receiving, Class C Felony offense and 60N-20-818, Theft by Receiving, Class D Felony. In 60CV-21-92, this case was dismissed as part of the deal in 60CV-20-818. Major Toni Rose, Pulaski County Detention-operations manager, testified that Howard had several incidents while in detention. On October 5, 2021, Howard had a fight while in the classroom where he slapped another detainee on the face. On December 6, 2021, he was placed in the Keep Separate List due to possible engagement of a fight with his cellmate. On January 12, 2022, Howard slapped the buttocks of an officer when he was asked to get back into his cell. Additionally, Ron Routh, Director of PC

7

Juvenile Detention, stated that Howard had been placed in detention six times since 2019;

6. Howard's mother, Denise Biggs, stated that Howard "acts like a kid" and that "he doesn't do things that grown people do". Furthermore, she testified he doesn't make decisions well. His sister, Denisha Howard, confirmed that Howard does participate in age-appropriate activities, and he helps with chores around the house. However, Ms. Promack testified that Howard has been noncompliant with attending school since 2018-2019 and had numerous disciplinary write-ups for disorderly conduct, bullying, attendance, harassment and leaving school grounds without permission;

7. Brooke Digby, Juvenile Ombudsman for the Public Defender Commission Office, testified that there are programs available to the judge of the juvenile division that are likely to rehabilitate the juvenile. Howard has been to C-Step, but he could benefit from the transfer of his case to an Extended Juvenile Jurisdiction (EEJ). Mrs. Digby testified about opportunities available to Howard through the Department of Youth Services which could aid in his rehabilitation, such as educational services, therapy services, community-based services and individualized treatment approaches;

8. In this instant case, Howard acted alone in the commission of the alleged offense;

9. No written reports and other materials were provided that related to the juvenile's mental, physical, educational and social history;

10. And, no other factors were deemed relevant.

On appeal, Howard argues only that the circuit court's denial of the motion to transfer is clearly erroneous because it "failed to attach sufficient weight" to Brooke Digby's direct-examination testimony. Outside of a quote of Digby's testimony about the services available to Howard if the pending charges were transferred and he were found to be delinquent, Howard makes no additional argument.

Having reviewed the record, we conclude that the circuit court's decision denying Howard's transfer motion was not clearly erroneous. The circuit court fulfilled its obligation to consider and make written findings on all the factors set forth in Ark. Code Ann. § 9-27-318(g). Here, the circuit court found that the seriousness of the alleged offense of first-degree murder

8

warrants prosecution in the criminal division of circuit court. The alleged offense was committed in an aggressive, violent, premeditated, and willful manner. The circuit court noted that in the camera footage, the suspect identified as Howard arrived at the scene of the offense and engaged in a fist fight with the victim and later fired a gun at the victim. The victim was found deceased. The supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. *Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004).

Here, the circuit court's order reflects that it did consider Digby's testimony. Whether there were programs available likely to rehabilitate Howard was but one factor for the court to consider. We will not reweigh the evidence on appeal, and the circuit court is not required to give equal weight to each factor. *Walton*, *supra*. Although there may be services available to Howard if the pending charge was transferred and he were found to be delinquent or subject to EJJ, the serious and violent nature of the alleged offense was alone sufficient to deny his juvenile-transfer motion. *See Otis*, *supra*. We are not left with a firm and definite conviction that the circuit court made a mistake in denying Howard's motion to transfer the case to juvenile court. Accordingly, we affirm the circuit court's order.

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*Mac Carder*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.