

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–15–952

| | | |
|---|---|---|
| ANDREW KISER | | Opinion Delivered: APRIL 6, 2016 |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-15-287] |
| V. | | |
| | | HON. TROY B. BRASWELL, JR., JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

On April 22, 2015, appellant Andrew Kiser was charged in the criminal division of circuit court with rape committed against his ten-year-old stepbrother. At the time the information was filed, Andrew was seventeen years and nine months old.

On July 17, 2015, Andrew filed a motion to transfer the case to the juvenile division of circuit court and for an extended juvenile jurisdiction (EJJ) designation. A hearing on appellant's transfer motion was held on September 10, 2015. On October 6, 2015, the trial court entered an order denying Andrew's motion to transfer and for EJJ designation, making written findings in support of its decision.

Andrew now appeals from the order denying his motion to transfer to juvenile court. On appeal, Andrew argues that the trial court's denial of his motion to transfer the case and for EJJ designation was clearly erroneous. We affirm.

SLIP OPINION

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2015). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court. *Z.T. v. State*, 2015 Ark. App. 282. The trial court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Z.T.*, *supra*. We will not reverse a trial court's determination of whether to transfer a case unless the decision is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id*.

At a juvenile-transfer hearing, the trial court is required to consider all of the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4)  The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5)  The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6)  The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7)  Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8)  Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9)  Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10)  Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g).  Pursuant to Arkansas Code Annotated section 9-27-318(h)(1), a trial court shall make written findings on all of the factors set forth above. However, there is no requirement that proof be introduced against the juvenile on each factor, and the trial court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred.  *K.O.P. v. State*, 2013 Ark. App. 667.

The events leading to the rape charge against Andrew occurred on April 20, 2015. On that day, Andrew was caught by his stepmother while in the shower, or immediately after showering, with his ten-year-old stepbrother.  Upon being confronted and questioned by his stepmother about what she had seen, Andrew left the house in his car.  Fearing that Andrew may have been contemplating suicide, Andrew's father called the police and asked

if they could help locate him. Shortly thereafter, the police found Andrew driving on a nearby highway, made a traffic stop, and brought him back to his home.

In his testimony at the transfer hearing, Officer DeWayne Grice stated that he was dispatched to Andrew's home in reference to an alleged sexual assault. In the presence of Andrew's father and his biological mother, Officer Grice read Andrew his *Miranda* rights, and Andrew initialed a *Miranda*-rights form indicating that he understood his rights. At first Andrew indicated that he did not wish to make a statement and that he wanted an attorney present, but he changed his mind and gave a statement at the encouragement of his father.[1] Andrew then stated to Officer Grice that he had been involved in a sexual encounter with his stepbrother in the bathroom earlier that morning.

Investigator Samuel Keller arrived at the house shortly thereafter, and he again advised Andrew of his *Miranda* rights. Andrew again confessed to engaging in sexual contact with his stepbrother that morning. After that, Andrew was taken into custody and transported to the police station, where he was Mirandized and gave a recorded interview. In the recorded interview, Andrew admitted that he had been sexually assaulting his stepbrother for about a year. Andrew stated that, on the morning he was caught by his stepmother, he and his stepbrother had engaged in oral sex and were masturbating each other in the shower. Andrew told the investigator that the sexual abuse of his stepbrother had developed in the previous year from mutual masturbation to more than twenty incidents

---

[1] We note that Andrew filed a motion below to suppress his statements to the police. However, that motion was denied, and Andrew does not challenge that ruling on appeal.

of oral sex and about three incidents of anal sex. In his statement to the police, Andrew admitted that he knew what he was doing, and he stated further:

> I've never felt that it was right. I've always been kind of disappointed in myself. I know that it's not right. I know that it's very, very wrong.

Erin Carroll is the assistant director of clinical services at the Piney Ridge Treatment Center, where Andrew received treatment subsequent to his arrest. Ms. Carroll testified that Andrew was diagnosed as having sexually maladaptive behaviors, but that he readily accepted responsibility for his actions and wanted to get help. Ms. Carroll indicated that Andrew was very cooperative and receptive to treatment. Ms. Carroll stated that Andrew did not meet any diagnostic levels for pedophilia, and that Andrew had conveyed that his actions were the result of confusion about his sexual orientation and access. Ms. Carroll gave the opinion that Andrew was at a low to moderate risk for further sexual offenses. She thought that Andrew was amenable to continuing therapy, which would encompass nine to twelve months of inpatient treatment followed by outpatient treatment.

Scott Tanner serves as the coordinator of the juvenile ombudsman division of the Public Defender Commission. Mr. Tanner gave testimony about the provisions of extended juvenile jurisdiction (EJJ), which is codified at Arkansas Code Annotated section 9-27-501 to −510.

Mr. Tanner testified that EJJ was created in 1999 to provide opportunities for juveniles charged with serious offenses to be afforded rehabilitative services through the juvenile division. Pursuant to the provisions of EJJ, a sixteen- or seventeen-year-old juvenile charged with rape is eligible for an EJJ designation. *See* Ark. Code Ann. § 9-27-501(a)(4). Mr. Tanner stated that if a juvenile is transferred to juvenile court and also

SLIP OPINION

receives an EJJ designation, the juvenile court may retain jurisdiction over the juvenile until he reaches twenty-one years of age. Under EJJ, numerous options are available, including a commitment to the Division of Youth Services (DYS). Mr. Tanner testified that there is a DYS facility located in Dermott, which provides treatment for sexually maladaptive behaviors similar to what Andrew had been receiving at the Piney Ridge Treatment Center. Mr. Tanner indicated that Andrew would be a suitable candidate for treatment at the Dermott facility. Mr. Tanner testified that, under the provisions of the EJJ, the juvenile court retaining jurisdiction may also impose an adult prison sentence. Such a sentence may be imposed if the juvenile court makes a finding that the juvenile has violated an order of the court, committed a new offense, or is not amenable to rehabilitation in the juvenile system. *See* Ark. Code Ann. § 9-27-507.

Andrew's grandfather also testified. He stated that Andrew was a good kid, although he was naive and fairly immature. Andrew's grandfather thought that Andrew was socially unaware as a result of being raised in a rural setting, and he stated that Andrew was not aware of a lot of the nuances of adult life. Andrew had, however, done part-time work for a construction company and worked at McDonald's.

In the trial court's order denying Andrew's motion to transfer and for EJJ designation, the trial court made written findings on all of the factors enumerated in Arkansas Code Annotated section 9-27-318(g). These findings were as follows:

1. The Defendant is charged with Rape, Y Felony. The alleged victim in this case is a 10 year old boy. The Court finds that, by the very nature of the offense, this offense is serious. Specifically, the Court heard the statements given by the Defendant, wherein he admitted that he engaged in sexual contact and intercourse with his 10 year old step-brother numerous times over a 12 month period. Therefore, the seriousness of the alleged offense and the

6


protection of society require that this case be prosecuted in the Criminal Division of Circuit Court.

2.      The Court finds that the alleged offense was committed in a premeditated and willful manner. Specifically, the Court heard the statement given by the Defendant, wherein he admitted that he engaged in sexual contact and intercourse with his 10 year old step-brother numerous times over a 12 month period. Moreover, the Defendant stated on one occasion he told his parents that he did not want to leave the house with the rest of the family, with the intention of being alone with the victim. As such, the case shall remain in the Criminal Division of Circuit Court.

3.      The alleged offense is Rape. The Court finds it was committed against a person and greater weight is given to an offense against a person. As such, the case shall remain in the Criminal Division of Circuit Court.

4.      The Defendant's culpability and planning and participation were clear. Specifically, the Defendant admitted he initiated sexual contact and intercourse with the victim. The Defendant stated that sexual contact and intercourse happened numerous times and that he had initiated the sexual encounters with the 10 year old victim. Moreover, the Defendant stated on one occasion he told his parents that he did not want to leave the house with the rest of the family with the intention of being alone with the victim.

        Further, the Defendant admitted that once the step-mother returned to the house, he lied to her about the whereabouts of the step-brother. This was done to avoid being caught with the step-brother in the bathroom. As such, the case shall remain in the Criminal Division of Circuit Court.

5.      There was no evidence presented that the Defendant has any prior juvenile or adult criminal history.

6.      The Court heard testimony from the Defendant's counselor that the Defendant acts like a "typical 18 year-old teenager" and was of average intelligence. The Defendant, in his statement, explained that on the night he was caught by his step-mother, he cashed his paycheck to put gas in his car and left the residence, indicating to the Court that he had a job and was mature enough to devise a plan to run. It is clear that he understood his actions were both wrong and serious. As such, the case shall remain in the Criminal Division of Circuit Court.

7.      Scott Tanner, Coordinator Juvenile Ombudsman Division, Arkansas Public Defender Commission, testified that there are programs and facilities that are

available to the judge of the juvenile division of circuit court for rehabilitation of the Defendant.

8.   The Court finds that the Defendant did act alone in the offense. As such, the case shall remain in the Criminal Division of Circuit Court.

9.   The written report by Erin Carroll, Primary Therapist for the Defendant, was entered as evidence. The Court finds that Ms. Carroll's testimony supports the finding that the Defendant is of average intelligence.

10.  The Court finds that the age of the victim being 10 years old is a relevant factor in determining that the case shall remain in the Criminal Division of Circuit Court.

In this appeal, Andrew argues that the trial court clearly erred in denying his motion to transfer the case to juvenile court with an EJJ designation. As a backdrop to appellant's argument, he asserts that the history and revisions of the Juvenile Code by the General Assembly suggest an intent and preference to focus on rehabilitation for even serious offenders through juvenile jurisdiction and the provisions of EJJ. Andrew notes that, in 1999, the legislature increased the number of factors to be considered in determining whether to transfer a case to juvenile court from three to ten. Also in 1999, the legislature created EJJ, which allows juvenile courts to maintain jurisdiction over qualifying, more serious juvenile offenders until age twenty-one. Citing Justice Imber's concurring opinion in *Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004), Andrew submits that these changes to the Juvenile Code make it clear that the General Assembly expressed a view that the juvenile court system is appropriate even for serious offenses, and that the blended sentencing options available through EJJ require the courts to look more favorably upon rehabilitation as an option.

In arguing that the trial court erred in denying the transfer in the instant case, Andrew takes issue with many of the trial court's particular findings, and he also contends that the trial court failed to give proper weight to the positive factors supporting a juvenile transfer. Andrew argues that the trial court misapplied the first factor under Arkansas Code Annotated section 9-27-318(g) because there was a lack of evidence that the protection of society required that he be prosecuted in the criminal division of circuit court. Andrew asserts that all of the evidence showed that he took responsibility for his actions and was amenable to treatment for his maladaptive behavior. He further asserts that society would be protected if the case was designated as EJJ because he could not be released until rehabilitation was completed, and he would also be subject to an adult prison sentence if deemed necessary. Additionally, Andrew argues that the trial court's finding of his level of maturity under the sixth statutory factor was erroneous, and asserts that the trial court failed to properly consider his unstable home environment, lack of understanding as to the nuances of adult life, and lack of sophistication. Andrew further argues that, under the ninth statutory factor, the trial court improperly relied on Ms. Carroll's written report demonstrating that Andrew was of average intelligence, without also considering the other evidence showing that Andrew lacked adult-like sophistication or maturity.

Andrew also argues that the trial court failed to give appropriate consideration to the factors supporting a juvenile transfer. Under the seventh statutory factor, Andrew contends that there are facilities and programs available that are likely to rehabilitate him before his twenty-first birthday. Andrew further notes that, as found by the trial court, there was no evidence presented that he had any prior juvenile or adult criminal history. Andrew argues

that, because the trial court's decision was clearly erroneous, its decision should be reversed and the case transferred to the juvenile division of circuit court with an EJJ designation.

Based on our review of the record, we conclude that the trial court's decision denying Andrew's transfer motion was not clearly erroneous. Although Andrew's offense was one making him eligible for EJJ consideration, the trial court was not required to transfer the case to juvenile court. While there were some factors tending to favor juvenile jurisdiction, such as the lack of a prior criminal history and the potential for rehabilitation, the trial court weighed these factors against the other factors that favored jurisdiction in the criminal division of circuit court. The trial court is not required to give equal weight to each of the statutory factors, and it may use its discretion in deciding the weight to be afforded each factor. *Neal v. State*, 2010 Ark. App. 744, 379 S.W.3d 634.

Our supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. *C.B. v. State*, 2012 Ark. 220, 406 S.W.3d 769. Our supreme court has also made it clear that the offense of rape is by definition a violent offense, which requires no additional threats or physical abuse. *Ring v. State*, 320 Ark. 128, 894 S.W.2d 944 (1995). As found by the trial court, Andrew admitted to repeatedly raping his ten-year-old stepbrother over the course of a year. These crimes were of a premeditated and willful nature, and Andrew, whom his therapist described as a typical eighteen-year-old with average intelligence, admitted that he knew what he was doing and that it was very wrong. Although Andrew's risk assessment for repeating a sex offense was stated to be low to moderate, it was not nonexistent. The trial court took into account that the sexual assaults, by appellant's own admission, were both willful and numerous, and that

Andrew was singularly culpable for the acts. The trial court also took into account the young age of the victim. The fact that there were treatment options available did not make the trial court's denial of the transfer erroneous. The trial court properly considered and made written findings on all ten of the applicable statutory factors, giving weight to the factors it deemed most relevant to the issue of whether to transfer the case. We are not left with a firm and definite conviction that the trial court made a mistake in denying appellant's motion to transfer the case to juvenile court. Because there can be no EJJ designation unless the case is already in the juvenile division of circuit court or is transferred to the juvenile division, *see J.S. v. State*, 2009 Ark. App. 710, 372 S.W.3d 370, we likewise find no error in the trial court's refusal to order an EJJ designation. Accordingly, we affirm the trial court's order.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*The Shaw Firm, PLLC*, by: *Laren M. Elenbaas*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.

SLIP OPINION