N. MARK KLAPPENBACH, Judge
Dawson Frederick Randof was charged with manslaughter, a Class C felony. The State alleged that he recklessly caused the death of A.R., his nine-week-old daughter. Dawson was seventeen years old when A.R. was hospitalized on June 24, 2017, and succumbed to her injuries on June 28, 2017. The White County Circuit Court denied Dawson's motion to transfer his case to the juvenile division of circuit court, and he now appeals. We affirm.
The transfer hearing was held on January 18, 2018. Dawson and his father, David Randof, testified in support of his motion. At the time of the alleged offense, Dawson was living with his girlfriend, Elizabeth, at her parents' home in order to help take care of A.R. Dawson said that his mother had allowed him to live there. Since A.R.'s death, he had moved back in with David and was repeating the tenth grade. He was two years behind in school because he had dropped out of the tenth grade when A.R. was born, and his mother had previously pulled him out of school in the eighth grade. Dawson had lived with his mother "at times," but David said that she had issues with drugs and had tried to be Dawson's friend instead of his parent. David said that Dawson's maturity had suffered as a result of his missing school, but he was a typical teenage boy who liked extracurricular activities and did not really like school. David said that Dawson was now in a much more stable environment in his home. David acknowledged that after Dawson had been interviewed by police, Dawson told him that he had shaken A.R.
Detective Terry Blanton of the Searcy Police Department testified about the investigation into A.R.'s death. Emergency services were called to the home at 5:47 a.m. on June 24, 2017. A.R. was found gasping for air and was transported to the local hospital. Hospital personnel discovered bleeding on the brain and possible broken bones and said that A.R.'s parents were not able to explain how these injuries occurred. A.R. was flown to Arkansas Children's Hospital and treated by Dr. Esquivel, who informed Blanton that A.R. had multiple brain bleeds, a spinal bleed, a spiral fracture of the right arm, a broken right leg, and five rib fractures in various stages of healing. Dr. Esquivel explained that some of the injuries were fresh but others were estimated to be seven to ten days old.
Blanton put together a timeline leading up to the 911 call. A.R.'s grandmother, Susan, told him that she had fed A.R. and put her back to sleep several times on the night of June 23 and morning of June 24, but Dawson had cared for A.R. briefly when she woke up around 1:00 a.m. Susan last fed A.R. around 5:00 a.m., after which Elizabeth drove Susan to work. Susan said that A.R. was crying when they left the house. Dawson was alone with A.R. from 5:20 to 5:47 a.m. when Elizabeth returned *309 home and found A.R. limp and unresponsive.
In interviews with police, Dawson said that approximately one week earlier he had tripped while carrying A.R., and she was smashed between him and a door frame. Dawson said that this occurred at a house out of town while he was walking up steps from the garage to the house. However, Blanton later confirmed that this house did not have steps leading from the garage to the house. Furthermore, Dr. Esquivel told Blanton that the type of fracture in A.R.'s leg could not have been caused from that type of impact; instead, the fracture was caused by a jerking motion while A.R.'s legs were dangling and was commonly seen with "shaken baby syndrome." In his last interview with Blanton, Dawson admitted having shaken A.R. at around 1:00 a.m. to try to get her to stop crying. The medical examiner, however, told Blanton that the acute closed-head injuries did not occur then because the extensive brain injuries would have caused A.R. to be unresponsive within a few minutes and she would not have subsequently woken up and taken a bottle.
The autopsy revealed that A.R. died of acute closed-head injuries and that healing closed-head injuries and multiple healing skeletal fractures contributed to her death. A.R.'s medical records showed that in the weeks before her death, she had experienced episodes of vomiting and diarrhea and was treated at Children's Hospital on June 21 and 22 for dehydration. The medical examiner opined that these symptoms may have resulted from the closed-head injuries and skeletal fractures that A.R. had sustained before the acute head injuries inflicted on June 24. He noted that her injuries were not grossly visible upon external examination. The medical examiner stated that the older trauma showed that A.R. had been the victim of repetitive physical abuse.
Amy Light Bridges, the White County juvenile intake officer, testified that the juvenile-treatment options for Dawson would be limited because his eighteenth birthday was only four months away. Bridges said that most treatment facilities discharged at eighteen years old but that the Division of Youth Services could keep him until his twenty-first birthday. Dawson's only history with the juvenile court system was a truancy case initiated by the school district in his eighth-grade year that was closed with no problems.
A prosecuting attorney has the discretion to charge a juvenile in either the juvenile or criminal division of circuit court if the juvenile was at least sixteen years old when he or she allegedly engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2015). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred. Kiser v. State , 2016 Ark. App. 198, 487 S.W.3d 374. The circuit court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. Kiser, supra. We will not reverse a circuit court's determination whether to transfer a case unless the decision is clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire *310 evidence is left with a firm conviction that a mistake has been committed. Id.
The circuit court must consider the following factors at a transfer hearing:
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the judge.
Ark. Code Ann. § 9-27-318(g)(1)-(10). The circuit court is required to make written findings on all the factors set forth above. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. Kiser, supra.
In this case, the circuit court made written findings regarding each factor listed in section 9-27-318(g). Dawson first takes issue with the court's findings regarding the protection of society and his prospects for rehabilitation. Dawson argues that if tried as an adult and convicted of manslaughter, a Class C felony with a potential sentence of three to ten years, he could be released before his twenty-first birthday. He claims that the court rejected rehabilitation outright without due consideration and that it should have considered the fact that his potential for rehabilitation is much greater if he is in the juvenile system. He disagrees with the court's finding that he was a "typical 17 year old with a normal level of sophistication and maturity."
Our review shows that the circuit court properly considered these factors. Instead of failing to consider rehabilitation, the court opined that rehabilitation was not available or appropriate in this case, noting that it was "not a crime of dishonesty or a drug offense for which rehabilitation would be beneficial." The only testimony regarding rehabilitation established that the rehabilitation options available to Dawson were severely limited due to his age. The court found that incarceration and punishment would be appropriate and that the protection of society weighed in favor of prosecution in the criminal division. The court noted Dawson's issues with *311 his mother and schooling, but an atypical home life does not preclude the court's finding that he exhibited a normal level of sophistication and maturity for a seventeen-year-old. To the extent Dawson makes an argument regarding extended juvenile jurisdiction, such an argument was not raised below and is meritless due to the decision to deny transfer to the juvenile division. See Sharp v. State , 2018 Ark. App. 255, 548 S.W.3d 846.
Dawson also argues that there was no evidence that he acted in an aggressive and violent manner or that he acted alone because other people in the household had access to the baby during the relevant time periods. The evidence, however, showed that the fatal head injuries A.R. received would have rendered her unresponsive just minutes thereafter. A.R. was awake before being left alone with Dawson from 5:20 to 5:47 a.m. when she was discovered to be unresponsive. Thus, although A.R. had suffered physical abuse over a period of at least one or two weeks, the evidence showed that extensive and fatal brain injuries were inflicted while she was in Dawson's care. Furthermore, Dawson admitted shaking A.R. at an earlier time and provided false information about possible causes of her injuries.
The circuit court properly considered the evidence on all the factors as required by the statute, and it was free to use its discretion in deciding the weight to be afforded to each factor. Clinkscale v. State , 2018 Ark. App. 273, 550 S.W.3d 49. The supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. C.B. v. State , 2012 Ark. 220, 406 S.W.3d 796. Dawson is accused of causing the death of a nine-week-old infant through physical abuse, which is a serious and violent offense. Based on consideration of all the factors, we conclude that the circuit court's decision to deny the motion to transfer was not clearly erroneous.
Affirmed.
Virden and Harrison, JJ., agree.