Cite as 2024 Ark. App. 603

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-24-251

| | |
|---|---|
| JONATHAN ROLFE<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** December 11, 2024<br><br>APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT<br>[NO. 62CR-23-51]<br><br>HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE<br><br>REMANDED WITH INSTRUCTIONS |

**BART F. VIRDEN, Judge**

Appellant Jonathan Rolfe was charged as an adult with three counts of capital murder and one count of felony theft of property. He brings this interlocutory appeal from the St. Francis County Circuit Court's denial of a motion to transfer his case to the juvenile division of circuit court. He argues that the trial court's order denying the transfer motion is deficient with respect to its factual findings and, alternatively, that the trial court erred in denying his motion. We remand with instructions for the trial court to provide the required findings.

I. *Motion to Transfer to Juvenile Division*

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of the circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-

318(c)(1) (Repl. 2020). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of the circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of the circuit court. *Donson v. State*, 2019 Ark. App. 459, 588 S.W.3d 84. The circuit court shall order the case transferred to another division of the circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). We will not reverse a circuit court's determination whether to transfer a case unless the decision is clearly erroneous. *Kiser v. State*, 2016 Ark. App. 198, 487 S.W.3d 374.

At the transfer hearing, the court shall consider all of the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). Pursuant to Ark. Code Ann. § 9-27-318(h)(1), a circuit court shall make written findings on all of the factors set forth above; however, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *Kiser, supra.*

After the State charged Rolfe as an adult with capital murder and theft, Rolfe moved to transfer his case to the juvenile division of circuit court. At the transfer hearing, Rolfe introduced testimony from ten witnesses, including Brooke Digby, the juvenile ombudsman for the Arkansas Public Defender Commission; Dr. Caren Moore, a psychologist who interviewed and evaluated him; Sandra Heard, his ninth-grade teacher; Kevin Mosley, his former baseball coach; Natasha Granger, his former music teacher; Michael Holt, a juvenile officer at the Craighead County Juvenile Detention Center; Aaliyah Lamb, his then sixteen-

year-old girlfriend; Latoya Houston, Lamb's mother; Bobbie Arnett, his paternal grandmother; and Sadie Blackwell, a juvenile intake officer for St. Francis County.

The State presented the testimony of Dale Arnold, a criminal investigator with the St. Francis County Sheriff's Office, who collected evidence at the scene, interviewed witnesses, and later developed Rolfe as a suspect. Also, the State introduced a video of the crime scene.

In denying Rolfe's motion, the trial court made the following findings:

1. The Defendant is charged with three counts of Capital Murder and one count of Theft.

2. The allegations against the Defendant are as follows: The Defendant, acting solely, did, on or about November 28, 2022, allegedly shoot his mother, Shalonda Barton, and her boyfriend, Jaterrance Wright, in the bed of the mother's home. The Defendant did further allegedly shoot and kill minor victim [MC1] in her bedroom at the mother's home. The crime scene investigation revealed that no items of value were taken and that several 9mm shell casings were recovered, including one in the purse belonging to Shalonda Barton. At approximately 2:20 a.m. the Defendant appeared at the home of his alleged girlfriend and her mother heard tapping on the window and contacted the Forrest City Police Department, believing there was a prowler at her home. The "prowler" was discovered to be Jonathan Rolfe. The evidence further revealed that the Defendant's biological sister, [MC2], had been taken from the Defendant's mother's home by the Defendant and she was delivered to her paternal grandmother, Bobbie Arnett, who testified at the hearing. The evidence revealed that a key fob was found to a black Cadillac, registered to Shalonda Barton, in a police car, in which the only detainee was the Defendant. Investigators tested the key fob found in the police car and it operated the Cadillac belonging to Shalonda Barton. The evidence at the hearing further revealed that items of clothing of the Defendant were sent to the Arkansas State Crime Lab for forensic evaluation.

3. The Defendant was 17 years of age at the time that the crimes were committed.

4

4. That Dr. Caren Moore, a psychologist, who had interviewed the Defendant, testified that he was age appropriate and that she could not render an opinion as to whether the Defendant could be rehabilitated.

5. That two of the Defendant's teachers testified that he was age appropriate.

6. That Sadie Blackwell, Juvenile Intake officer, testified that the Defendant had no previous adjudications as a juvenile offender, but that he "scored high" as to his risk level. She based this opinion on an interview and assessment with the Defendant. She testified that the Defendant had several gang associations, based on his self-report, and that his risk of reoffending was high based upon self-reported emotional trauma and substance abuse by the Defendant.

7. There was further proof, primarily from the testimony of Bobbie Arnett, that the Defendant had an unstable homelife and that he had issues with and very little connection to his mother. She further testified that the father of the Defendant, her son, was imprisoned in the Arkansas DOC for Murder in the Second Degree and that she took the Defendant to visit him while incarcerated.

8. The Court finds that this case should not be transferred to Juvenile Court, and that the Criminal Division of St. Francis County is the proper forum for the adjudication of this case based on the seriousness of the offenses charged, the violence employed, the personal injuries suffered by the three victims, the proof that there is little belief that he will not reoffend, and that there is not sufficient provision for his rehabilitation in the juvenile system.

## II. *Discussion*

Rolfe addresses each paragraph of the trial court's order and argues that the findings are lacking in some respect because they do not cover every aspect of the particular factor at issue. Rolfe further contends that the trial court did not address factors (8), (9), and (10) at all in its order and that the case should be remanded for more specific findings.[1] *McClendon*

---

[1]Rolfe, citing *Houselog v. State*, 2024 Ark. App. 393, 690 S.W.3d 850—which he describes as a "seismic event"—argues for the first time in his reply brief that "[t]he circuit

*v. State*, 2019 Ark. App. 115, 572 S.W.3d 443. We disagree that the trial court did not address the eighth factor, and the tenth factor is simply a catch-all for the trial court to list any other factors it deems relevant.[2]

The ninth factor that must be considered is "written reports and other materials relating to the juvenile's mental, physical, educational, and social history." The State contends that the trial court's order made "explicit reference" to Dr. Moore's interview with Rolfe, which resulted in her report, and that the trial court made determinations in paragraph four of its order that were based on "salient aspects of her testimony vis a vis the report." The State concludes that the trial court's order thus "substantially complied" with the requirement that the trial court provide a written finding on each factor.

Rolfe sat for a five-hour interview with Dr. Moore, which culminated in an extensive seventeen-page report on her assessment of Rolfe's "present level of social, emotional, academic, cognitive, and attentional functioning." While the trial court did refer to Dr.

---

court should not get another opportunity to cure the deficiencies of its order." *Houselog* is distinguishable in that the trial court's findings in that case were not simply deficient—they were wholly inconsistent with the evidence presented. In any event, an argument made for the first time in a reply brief comes too late. *Bynum v. State*, 2017 Ark. App. 41, 511 S.W.3d 860. A reply brief is the place for rebuttal, not entirely new arguments for reversal, and it is well established that the appellate court will not consider an argument made for the first time in a reply brief. *Id.* Here, the State has had no opportunity to respond to Rolfe's new argument.

[2]To the extent that the trial court failed to make a finding with respect to the tenth factor, the statute could be satisfied by simply inserting a sentence that the trial court did not deem any other factors relevant to its decision, given the absence of any mention of such additional factors.

Moore's interview with Rolfe, it made no mention of the report. The ninth factor specifically calls for consideration of written reports, and Dr. Moore's report may have been relevant to the sixth factor as far as Rolfe's emotional attitude. Because the trial court did not make specific findings with respect to the ninth factor despite evidence in the record, we remand for the trial court to make those findings. We also take this opportunity to point out that, while the statute does not require that the findings be made in chronological order, it may be the better practice to list the factors sequentially and make findings on each one in turn, before moving to the next one.

Remanded with instructions.

KLAPPENBACH and BARRETT, JJ., agree.

*Brent P. Gasper*, Arkansas Public Defender Comm'n, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.