Cite as 2026 Ark. App. 2

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CR-25-24

| | |
|---|---|
| BRYCE ANDERSON | Opinion Delivered January 7, 2026 |
| APPELLANT | |
| | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | [NO. 04CR-24-679] |
| | |
| STATE OF ARKANSAS | HONORABLE BRAD KARREN, JUDGE |
| APPELLEE | |
| | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellant Bryce Anderson filed this interlocutory appeal from the Benton County Circuit Court's denial of his motion to transfer his case—wherein he was charged as an adult with first-degree murder and first-degree battery of his three-month-old child ("MC")—to the juvenile division. Anderson maintains on appeal that the circuit court made several findings that were inconsistent with the evidence; thus, the court clearly erred by denying his juvenile-transfer motion and reversal is required. In the alternative, Anderson argues that the circuit court's failure to make a written finding on whether it relied on any additional factors in denying transfer requires remand to the circuit court. We affirm.

## I. *Background Facts*

Anderson and Brooke White had a child, MC, who was born on November 30, 2023. Brooke and MC were allowed to spend the night with Anderson—who lived with his parents

and siblings—and they did so on the night of March 3, 2024. On the morning of March 4, Anderson's parents and Brooke left for work, and Anderson's siblings left for school; therefore, Anderson was the only person at home with MC. According to Anderson, he woke up to MC's crying, and then while feeding MC, the baby began to go limp in his lap. Anderson alleged that at first, he believed MC was falling asleep, but then he noticed MC was not responding. Paramedics transported MC to Rogers Mercy Hospital. MC exhibited no visible signs of bleeding, bruising, or trauma; however, he was in critical condition. MC was flown to Kansas City Mercy Children's Hospital that same day. A social worker from Kansas City Mercy called Detective Chase Henry with the Bella Vista Police Department and told him that MC's CT scan showed a brain bleed. MC then was transferred to Arkansas Children's Hospital on March 28, 2024. MC passed away on April 7 as a result of his injuries.

Anderson was charged as an adult with first-degree murder and first-degree battery of MC. He moved to transfer his case from the circuit court to the juvenile division, and the court held a hearing on the motion on October 2, 2024. At the time of the transfer hearing, Anderson was five days from turning eighteen.

Hearing testimony evidenced the following. Dr. Liza Murray, an associate professor of pediatrics and a child-abuse pediatrician for the Team for Children at Risk at Arkansas Children's Hospital, diagnosed MC with abusive head trauma and physical abuse. According to Dr. Murray, when MC sustained his injuries, "the symptoms would have been immediate[,] . . . persistent and obvious." MC had an intercranial hemorrhage, which is

located below the surface of the skull.  More specifically, MC had a subdural hemorrhage, which is blood on the surface of his brain between the brain and the dura membrane. The distribution of the subdural hemorrhage—overlying the surface of the brain and in between the brain—is associated with injuries caused by rotational forces. Testimony established that while a fall or impact causes a focal injury, bleeding overlying the surface of the brain is indicative of rotational injures causing tears in the bridging veins that overlie the surface of the brain.

Additionally, MC suffered hypoxic ischemic brain injury, meaning a lack of oxygen to the brain. MC had retinal hemorrhages caused by a contraction on the eyes. Specifically, retinal hemorrhages are caused by a rotational whiplash-type injury, and they indicate abusive head trauma. MC also had a spinal-ligament injury below the back of his skull, as shown by swelling and signaling in his MRI. MC had bucket-handle fractures to both of his femurs, and testimony explained that these fractures are highly suspicious for child abuse because the only way they occur is from a traction or pulling mechanism, not from an impact or drop.

Anderson's mother testified that he was subjected to a rough upbringing.  Anderson's father was in and out of jail and put on probation for a sex-related offense in 2018.  Anderson is legally blind in one eye and had an individualized education plan as well as a 504 plan in school.  He had a fifth-grade reading level in ninth grade and was expelled from school on more than one occasion for various reasons. Anderson's mother also testified that he withdrew from school in 2023 to work on his GED. Anderson started working at Dairy

3

Queen when he was sixteen and then worked at McDonald's. She stated that she provided most of Anderson's support and that Anderson used his paychecks to pay for MC's diapers, formula, and clothing.

Witnesses testified regarding Anderson's behavior and participation in rehabilitation resources while he was at the Benton County Juvenile Detention Center (JDC). The staff said that Anderson adapted to the rules, stayed out of trouble, kept to himself, and was a model resident. Kellen Constant, one of his teachers at JDC, testified that Anderson was "probably . . . the least problematic student [she'd] ever had at JDC" and had "become more studious over time." Constant and Anderson's special-education teacher at JDC both believed he would benefit from juvenile services.

Anderson earned six certificates while at the detention center: one for "[p]articipating in 1 hour Job Corps admission information presentation" and another for "[c]ompleting 4.5 hours of Financial Literacy Life Skills." Brooke Digby, the juvenile ombudsman at the Arkansas Public Defender Commission, explained that all the services provided by the Department of Youth Services (DYS) would be available to Anderson if he were adjudicated delinquent and would expire when Anderson turned twenty-one. Digby, however, noted that bed space at DYS was an issue, and children committed to DYS typically spent sixty days waiting for a bed.

Drew Shover, the chief probation officer for the Benton County Juvenile Court, explained that part of his job is to recommend services available to a defendant adjudicated delinquent in the juvenile division of circuit court. Because Anderson was almost eighteen

4

years old, county-level services available to him would be limited, and most of them were unavailable for eighteen- to twenty-one-year-old juvenile offenders. Shover recommended state-level resources through DYS; however, he noted that the state system was cumbersome, hard to manage, and overloaded—resulting in delays in providing services.

After testimony was completed, the circuit court denied Anderson's motion to transfer his case to juvenile court. Subsequently, the circuit court entered its written order denying the transfer motion. Anderson filed a timely notice of appeal, and this appeal followed.

## II. *Standard of Review*

The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court. *Kiser v. State*, 2016 Ark. App. 198, 487 S.W.3d 374. The circuit court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2) (Repl. 2020). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Woods v. State*, 2018 Ark. App. 576, 565 S.W.3d 124. This court will not reverse a circuit court's determination of whether to transfer a case unless the decision is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *Id.*

III. *Points on Appeal*

Anderson argues that the circuit court made several findings that were inconsistent with the evidence and misconstrued the meaning of several factors listed in Arkansas Code Annotated section 9-27-318(g), and thus, the court clearly erred by denying his juvenile-transfer motion, and reversal is required. In the alternative, Anderson argues that the circuit court's failure to make a written finding on whether it relied on any additional factors in denying the motion to transfer requires remand to the circuit court for a proper finding.

IV. *Discussion*

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1). Upon the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). At a juvenile-transfer hearing, the circuit court is required to consider all of the following factors:

> (1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

> (2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

> (3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

> (4) The culpability of the juvenile, including the level of planning and participation in the alleged offense.

6

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). Pursuant to section 9-27-318(h)(1), a circuit court shall make written findings on all of the factors set forth above. However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *K.O.P. v. State*, 2013 Ark. App. 667.

In considering whether the circuit court's decision was clearly erroneous, this court has determined that there are four tests to be applied when reviewing the entire record without reweighing the evidence:

(1) Are the circuit court's written findings accurate and consistent with the evidence; and

7

(2) If any factual findings are *not* consistent with the evidence, are such inconsistencies material enough to warrant a reversal of the transfer order?

(3) Does the written order provide enough detail and facts to support the court's conclusions; and

(4) Are there specific findings on the statutory factors tailored to the juvenile and the evidence?

*Minor Child v. State*, 2024 Ark. App. 393, at 11, 701 S.W.3d 751, 759 (emphasis in original). The denial of a juvenile-transfer motion is not clearly erroneous simply because some evidence might weigh in favor of granting the motion. *E.g.*, *Shaw v. State*, 2023 Ark. App. 55, 660 S.W.3d 591.

Regarding factor one—seriousness of the crime—Anderson argues that the circuit court "focused almost entirely on this factor, particularly in its incorrect assessment that juveniles charged with murder cannot be or are unlikely to be rehabilitated." Anderson maintains that seriousness of the offense alone is not sufficient to refuse transfer. To the contrary, however, our supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. *C.B. v. State*, 2012 Ark. 220, 406 S.W.3d 796. Furthermore, we disagree that the court's ruling was inconsistent with the evidence. The court considered the significance that Anderson was charged with first-degree murder and first-degree battery stemming from "a violent physical attack on a helpless infant[,]" and as our supreme court has held, the serious and violent nature of the offense is enough to justify the denial of a juvenile-transfer motion.

8

Next, Anderson maintains that factor two weighs in favor of transfer and that the circuit court erred in its analysis because there was no evidence presented to suggest that the charged acts were committed in an aggressive, violent, willful, or premeditated manner. We disagree. As identified by the circuit court, the testimony of Dr. Murray detailed a litany of extensive injuries to MC—intracranial bleeding, subdural hemorrhage, a cervical spine ligament tear, lumbar spine bleeding, retinal bleeding in both eyes, and a distal fracture of the femur. It is undisputed that Anderson was the only person with MC when the injuries occurred, and the medical expert also testified that MC's symptoms would have been apparent immediately. While intent is rarely proved by direct evidence, it can be inferred from the circumstances of the crime. *See, e.g.*, *Dulle v. State*, 2019 Ark. App. 378, 582 S.W.3d 28. Anderson maintains that his attempt to call his mother before calling 911 evidences his lack of knowledge and premeditation—and that the circuit court erred by ignoring this fact. However, the circuit court's affording more weight to certain pieces of evidence over others does not signal error. Anderson's request is merely an attempt to have this court impermissibly reweigh the evidence in his favor.

Anderson contends that the circuit court erred by making no reference to his diminished capacity. Specifically, Anderson argues that the circuit court erred by failing to consider that he "made no attempt to conceal what had happened to MC" and failed to show how he would be an ongoing threat to society. First, Anderson's claim that he made no attempt to conceal what happened to MC is false. Anderson alleged that MC just went

9

limp in his arms while feeding—a version of the facts that is inconsistent with the evidence. Furthermore, while it is true that the circuit court did not specifically reference Anderson's diminished capacity due to age, there is no requirement that the court must include those facts in its order. The court considered Anderson's participation in the offense, the severity of the injuries, and the evidence that MC's injuries would have been immediately apparent.

Next, Anderson argues that the circuit court erred in its analysis of factor six—the maturity of the juvenile. In analyzing this factor, the circuit court considered evidence that Anderson lacked maturity, that he desired to be treated as an adult, and that he had some level of maturity. Anderson argues that the circuit court erred in finding that testimony from detention-center employees demonstrated that he was a "leader" and ignored evidence that he was entirely reliant on his mother. Again, Anderson is essentially arguing that the circuit court did not weigh this factor the way he wanted it weighed, which does not make the court's decision clearly erroneous or necessitate remand. *See, e.g., Lindsey v. State*, 2016 Ark. App. 355, 498 S.W.3d 336. Detention-center employees characterized Anderson as a "model resident," reliable, trustworthy, and the least problematic student that one staff member had ever encountered, and Anderson's mother testified that his paychecks were used to purchase items for MC and anything MC's mother needed. Finally, the circuit court noted that Anderson fathered a child, and his family allowed MC's mother to spend the night at Anderson's house—evidencing his desire to be treated as an adult.

Regarding factor seven, Anderson argues that there was simply no evidence presented at the transfer hearing to support the circuit court's conclusion that Anderson's charges were

not conducive to rehabilitation. However, in making its determination, the circuit court considered the severity of the crime and whether, due to housing delays, the amount of time Anderson could receive services would be sufficient to ensure successful rehabilitation. Accordingly, we cannot say that the circuit court's finding was clearly erroneous.

As to factor eight, Anderson claims that the fact that he acted alone should weigh in favor of transfer rather than against it. Specifically, Anderson contends that factor eight applies when deciding whether a juvenile participated in a crime as part of a street gang. Accordingly, Anderson contends that the opposite—acting alone—weighs in favor of transfer. The State maintains that if the legislature intended for this factor to be in place merely to determine whether an individual committed the crime as part of a gang, it would have written it to specifically address such. We agree. Arkansas Code Annotated section 9-27-318(g)(8) requires the circuit court to simply consider "[w]hether the juvenile acted alone or was part of a group in the commission of the alleged offense." The circuit court did so when it held that Anderson acted alone and was the sole participant in the alleged offense; thus, there was no clear error.

Finally, Anderson argues that the circuit court interpreted and analyzed his school records inappropriately as to factor nine. While the court commended the certificates Anderson received while detained, it also considered his high school records in making its determination on whether this factor weighed in favor of or against juvenile transfer. The court held that the evidence showed that Anderson had been expelled two times; that he had multiple school absences; and that his level of school participation in remote learning

11

was close to zero. The court also considered the fact that Anderson dropped out of high school and instead chose to work toward his GED as evidence that he did not want to be in school with classmates his age. Anderson maintains that this evidence should have been applied instead to show that his lack of participation in school evidenced his inability to focus in a group setting, his lack of social maturity, and his inability to adapt to his environment. However, we will not reweigh the evidence simply to reach Anderson's preferred conclusions.

Having given the matter careful review, we hold that the circuit court properly considered and made written findings on the factors as required by statute, giving weight to those it deemed most relevant to the issue of whether to transfer the case.

## B. Additional Factors

Alternatively, Anderson argues that this case should be remanded because the circuit court failed to make written findings on section 9-27-318(g)(10) and was required to do so. The tenth factor is "any other factors deemed relevant by the judge." Ark. Code Ann. § 9-27-318(g)(10). In response, the State concedes that the circuit court made no written finding on the tenth factor; however, it argues that the failure to do so does not amount to error but rather manifests that the circuit court did not consider any other factors in denying the motion.

Anderson cites *Rolfe v. State*, 2024 Ark. App. 603, 703 S.W.3d 510, to support his argument that remand is required if the circuit court fails to write anything on the tenth factor. However, that was not the holding of *Rolfe.* In *Rolfe*, the appellant maintained that

12

the case should be remanded for more specific findings because the circuit court failed to address factors eight, nine, and ten. The circuit court made a written finding on factor eight but failed to address factor nine or ten. Accordingly, we remanded with instructions for the circuit court to make specific findings with respect to the ninth factor. Regarding factors eight and ten, this court held, "We disagree that the trial court did not address the eighth factor, and the tenth factor is simply a catch-all for the trial court to list any other factors it deems relevant." *Id.* at 6, 703 S.W.3d at 513. While we acknowledge this court's footnote in *Rolfe* stating that "with respect to the tenth factor, the statute could be satisfied by simply inserting a sentence that the trial court did not deem any other factors relevant to its decision," we note that *Rolfe* was not remanded as to factor ten and the footnote was not essential to this court's holding. *See id.* at 6 n.2, 703 S.W.3d at 513 n.2. Accordingly, we affirm the circuit court's order.

## V. *Conclusion*

For the above-stated reasons, the circuit court's order denying Anderson's motion to transfer to juvenile court was not clearly erroneous, and we affirm.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.

13